## ATLANTA, B. & C. R. CO. v. UNITED STATES.

District Court, N. D. Georgia, Atlanta Division. October 26, 1928.

No. 497.

Alston, Alston, Foster & Moise and John I. Hynds, all of Atlanta, Ga., and Carl H. Davis, of Wilmington, N. C., for complainant.

Blackburn Esterline, Asst. Atty. Gen., and Edward M. Reidy, of Washington, D. C., Counsel for Interstate Commerce Commission, for the United States.

Before WALKER, Circuit Judge, and DAWKINS and SIBLEY, District Judges.

SIBLEY, District Judge. The order of the Interstate Commerce Commission here in question arose in this way:

■ Certain railroads and their equipment, now owned by the Atlanta, Birmingham & Coast Railroad Company (called hereafter the Coast Company), after five years of unprofitable operation under a receivership in this court, were sold at foreclosure sale to representatives of their bondholders, who proposed to organize a corporation, the Coast Company, to take over and operate them. The new corporation was to issue, in return for the railroads, $5,180,000 of preferred stock and 150,000 shares of common stock without par value. The preferred stock was to be used to pay bondholders' claims, and the common stock was to be sold to the Atlantic Coast Line Railroad Company (called hereafter the Coast Line Company) in consideration of its guaranty of the principal and dividends of the preferred stock, and of its payment, or assumption, of accumulated losses in operation, taxes, and receivership and reorganization expenses, amounting to about $4,080,000. The Coast Company took proceedings before the Interstate Commerce Commission to obtain leave to operate the railroads and issue the stock, and by separate proceedings the Coast Line Company sought authority to acquire the common stock on the terms set forth. The proceedings were consolidated, and by several successive orders the authorities sought were granted.

The representatives of the bondholders deeded the railroads to the Coast Company in consideration of its entire stock issues and disposed of the preferred stock to the bondholders and of the common stock to the Coast Line Company, as proposed. The Commission's order of December 21, 1926, authorizing the Coast Company thus to issue and dispose of its stock imposes this condition: "Provided, however, and authority to issue said stock is granted upon the express condition, that for the purpose of accounting, as provided in the Classification of Investment in Road and Equipment in the text of Account 41, 'Cost of Road Purchased,' the cash value of the preferred stock issued must, in stating the transactions in the accounts, be reckoned on a basis not in excess of its par value and that the cash value of the common stock issued must be reckoned on a basis not in excess of the amount received therefor."

In August, 1927, the Coast Company undertook to set up its accounts in compliance with the general requirements of Account 41 of the Commission's Classification of Investment in Road and Equipment, which covers all cases of purchased roads, and also in compliance with the conditions of the order of December 21, 1926, specially applying to this transaction. It proposed, since its entire stock was exchanged for the railroads, to treat them as worth $30,000,000, in round figures, on the basis of the valuation of the railroads as of 1914, made by the Commission itself, under section 19a of the Commerce Act (49 USCA § 19a). Director Wylie, of the Bureau of Accounts, rejected this proposal and insisted that this valuation was based on reproduction cost new, rather than the actual cost to the Coast Company, and he insisted that figures of about $5,180,000 for the preferred stock, plus $4,080,000 paid by the Coast Line Company for the common stock, $9,260,000 in all, be the basis. The Coast Company then made a supplemental application to the Commission, asking for a hearing and for a construction of the order of December 21, 1926, and for leave to use the figures and basis first proposed. Without a hearing the application was denied on April 9, 1928.

The Commission's classification rule, formulated for stating original investment in road and equipment, whether constructed by the accounting carrier or purchased by it, evidently aimed to avoid "watered" or even estimated values, and to reflect only actual outlays. Cost and not value is everywhere spoken of. But rule 41, dealing with a purchased road, of necessity requires that, when a road is paid for otherwise than by cash, the "current cash value of the consideration" is to be entered in the accounts. The consideration here was stock, preferred and common. The valuation of the preferred stock at $5,180,000 is not disputed. Two methods of valuing the common stock are contended for—one, that it was worth the value of the roads acquired, less the value represented by the preferred stock; the other, that it was worth what the Coast Line Company paid for it in cash, $4,080,000. The requirement of the order of December 21, 1926, that the common stock must be reckoned "on a basis not in excess of the amount received therefor," comes to the same thing as the requirement of rule 41, and meets the same divergent constructions. It cannot be said with accuracy that the money paid by the Coast Line Company was received by the Coast Company for its stock. The Coast Company received for the stock the deed of the bondholders' representatives covering the railroads, and they in turn sold the common stock to the Coast Line Company, and for a consideration, not only of $4,080,000 actually paid, but also of heavy guaranties of dividends on the preferred stock.

over and above its par already allowed in this valuation.

The words of the order of December 21, 1926, were acted on by the parties and should have their fair operation. We think they require that the valuation of the stock and the offsetting entries as to the investment in road and equipment should be fixed on a basis of the fair cash value of the property acquired by the Coast Company in exchange for its stock as of the date of its acquisition by it. We do not think this valuation is fixed, either by the value as of 1914, made by the Commission, or by what the Coast Line Company was willing to pay and assume, though both may be matters important to be considered in making a fair valuation; for, on the one hand, the Coast Line Company may not have paid the full fair value in its trade with the bondholders' representatives, while, on the other hand, hearings, both before this court and before the Commission, had pending the sale, strongly indicate that these railroads, circumstanced as they were, were not then worth, for sale or operation, nearly what had been originally invested in them.

Independently of the Commission's power under section 20, subsection 1 and subsection 5 (49 USCA § 20 (1, 5), to establish uniformity in and prescribe the forms of accounts of carriers, section 1, subdivision 20 (49 USCA § 1 (20), authorizes the imposition of conditions upon its grant of a certificate of public convenience and necessity for the acquisition and operation of a railroad, and by necessary implication it has power to see that the condition is complied with. Disobedience to an order made to this end touching the accounts would be punishable under section 20, subsection 7, of the act as a willful failure to make a correct entry and the keeping of a record other than that approved by the Commission. The order, by consequence, is one over which this court has jurisdiction under U. S. Code, title 28, § 41 (28), 28 USCA § 41 (28).

While the Commission might, on the record already before it, properly refuse to allow its valuation of the railroads as of 1914 to be the measure of their fair value when acquired by the Coast Company, nevertheless to fix the value suggested by Director Wylie without a hearing would be arbitrary and unlawful. We are in some doubt whether the order of April 9, 1928, really goes so far, but it is so interpreted in the bill (see paragraph 14), and neither the answer of the Commission nor the argument of its counsel has repudiated that interpretation.

We conclude it should be set aside, leaving the supplemental application of the Coast Company to stand for a hearing before the Commission in due course.