## ATLANTA, B. & C. R. CO. v. UNITED STATES.

District Court, N. D. Georgia. January 18, 1930.

No. 497.

George B. Elliott, of Wilmington, N. C., and Carl N. Davie, Brandon & Hynds, and Alston, Alston, Foster & Moise, all of Atlanta, Ga., for complainant.

E. M. Reidy, of Washington, D. C. (D. W. Knowlton, of Washington, D. C., of counsel), for Interstate Commerce Commission.

Blackburn Esterline, Asst. Sol. Gen., of Washington, D. C., for the United States.

Before WALKER, Circuit Judge, and DAWKINS and SIBLEY, District Judges.

SIBLEY, District Judge. This litigation was previously before the court in Atlanta, Birmingham & Coast Railroad Co. v. United States (D. C.) 28 F. (2d) 885. The recitals there made need not be repeated. We continue to call the complainant, for brevity, the Coast Company. At that time an order of the Interstate Commerce Commission, made upon a supplemental application of the Coast Company for interpretation of a former order, dated December 21, 1926, touching the accounts of the company, was set aside because granted without a hearing. A hearing has since been had before the Commission in which the only additional evidence offered was by the Coast Company, consisting of proof of the valuation as of June 30, 1914, of the railroads in question, made by the Commission under section 19a of the Interstate Commerce Act, with adjustments because of retirements, additions, and betterments to January 1, 1927, thus arriving at a

value as of the latter date of $29,471,859. The Commission, by a report dated October 29, 1929, announced its final conclusion as follows:

"Counsel for the new company (the Coast Company) also contend that paragraph 2 of Section 19a requires that the value found under that section be treated as prima facie evidence of the value to be included in the investment accounts of the new company; but we do not regard that value as pertinent or material evidence in the determination of investment, as that term is used in our accounting regulations. Upon consideration of the record as supplemented we find and conclude that the amount to be included in the balance sheet of the new company representing investment in road and equipment as of January 1st, 1927, may not exceed $9,-261,043.87. The company will be expected to adjust its accounts in accordance with this finding within sixty days from the service of this report."

The report was served. By a supplemental proceeding here, the Coast Company seeks to set this conclusion aside as an unlawful order of the Commission by virtue of 28 United States Code 41(28), 28 USCA § 41 (28).

■ 1. It is contended by the United States that what has been quoted is not an order of the Commission, but a mere report preliminary to an order, and that therefore this attack is premature. While in form it is such a report as is often made preliminary to an order, under the circumstances of this proceeding we think it was intended by the Commission as the final statement of its requirement in the premises, to be followed by nothing further. The time limit of sixty days from service fixed for compliance would otherwise have no meaning. The Coast Company treated it as an order in attacking it before this court. The court, to avoid consideration of a restraining order, requested the Commission to extend the effective date of this requirement to give time for a full hearing. The Commission did not disclaim its action as final, but did extend the time of compliance for sixty days more. We think the requirement is to be treated as an order, disobedience of which could be punished, and which may be reviewed in this court for the reasons stated in our former opinion.

■ 2. Upon the merits, the United States contends that the figure $9,261,043.87, fixed by the Commission, being the undisputed total of the preferred stock of the company and what was actually paid out by the Atlantic Coast Line Company for the acquisition by it of the no par common stock of the Coast Company, is therefore the only possible figure to represent the investment in these railroads. The vice of the position lies in confusing the two companies. It is not the investment of the Coast Line Company but of the Coast Company which is in question. The entries are to be made on the books of the latter and not of the former company, and in accordance with the special requirements of the order of December 21, 1926, and the general requirements of the Commission's Accounting Regulation No. 41, headed "Cost of Road Purchased." The first paragraph of the order of December 21, 1926, was entered upon the application of the Coast Company to be allowed to issue its stock, and the Coast Line Company was not mentioned therein. The concluding words, "Provided, however, and authority to issue said stock is granted upon the express condition that * * * the cash value of the common stock issued must be reckoned on a basis not in excess of the amount received therefor," can mean only the amount received by the Coast Company for its stock, and not what was paid by the Coast Line Company to the bondholders' committee for it. The Coast Company received, and was, under the reorganization plan, to receive, not a dime of money, but only the deed to the railroads. So far as it was concerned, it paid no cash for the deed, but only its stock. The Commission's Accounting Regulation No. 41, referred to expressly in the order of December 21, 1926, requires, "where the consideration given for the property purchased is other than cash, such consideration shall be valued on a current cash basis." The stock which constituted the consideration for the road must therefore be valued on a cash basis. Because it represented on January 1, 1927, nothing except the railroads purchased, it can be valued only by valuing them. So that the requirement of the regulation and of the condition in the order come practically to the same thing; each necessitating a valuation of the railroads as of January 1, 1927.

Notwithstanding the close connection between the Coast Line Company and the new Coast Company, they are separate corporations. The new company is but beginning its career. Its stockholders may change and creditors having separate interests may arise. Separate corporate organization can sometimes be disregarded in order to defeat fraud or reach the true rights of stockholders and creditors, but the separate accounting of railroads under the Interstate Commerce Act (49

USCA § 1 et seq.) presents no such case. This separately organized railroad enterprise is entitled to have its separate and independent accounts under the usual regulations, and this was plainly indicated by the order of December 21, 1926. The entry here in question may hereafter constitute admissible evidence in fixing rates, recapture of profits, ascertainment of depreciation, assessment of ad valorem taxes, and the like. The purchase of the railroads by the Coast Company with its stock was its own transaction. It was unaffected (save that the foreclosure sale was held up until the Coast Line Company should fully pay its assumptions to the bondholders' committee) whether those assumptions had turned out to be $3,677,500, as was first supposed, or $4,080,697, as turned out to be true, or $10,000,000, as might have happened. In any case, the cash value of the railroads diminished by the undisputed value of the preferred stock represents the investment of the common stock under Accounting Regulation No. 41, and under the terms of the enabling order of December 21, 1926. The cash payments by the Coast Line Company in acquiring the common stock from the bondholders' committee did not necessarily measure its value, nor did they make the purchase by the Coast Company of the railroads a cash transaction so as to put into operation the provisions of Regulation No. 41 touching cash purchases. It is true that regulation seeks to have recorded the historical fact of the amount invested rather than the value of the investment. The necessary exception recognized in the regulation does exist when, as here, the purchasing company does not pay cash. The Coast Line Company's purchase of the stock has this much to do with it: It is a voluntary cash transaction occurring at the critical time and having a close relationship to the value of the railroads, inasmuch as it expresses their value as estimated by the bondholders' committee and the Coast Line Company. It is evidence, but not the exclusive nor conclusive evidence of the then actual cash value of the railroads.

3. We also disagree with the contention of the Coast Company that their accounting figure should be fixed on the basis of the Commission's valuation of the railroads as of June 30th, 1914, corrected as above stated. The railroads were then owned by another company, and the Coast Company's books are not to be in this respect a mere continuation of the predecessor's investment account. A railroad property very valuable in 1914 may, in 1927, have become of slight value, not because of physical changes in the prop-

erty, but because of general or special conditions preventing its successful operation. But the value authoritatively and expertly fixed in 1914 would, along with testimony connecting it with January 1, 1927, be admissible evidence to ascertain the value at the latter date. The Commission's valuation of railroads is expressly made prima facie proof in all proceedings under the Commerce Act. This is such a proceeding. It follows that the Commission's conclusion that this valuation was "neither pertinent nor material evidence in the determination of investment" was erroneous in this case, where the investment was not of cash but must be determined by the ascertainment of value. A fair estimate of the value of the property on January 1, 1927, would require consideration not only of the cash dealings at that time respecting it and of the conditions then surrounding its use, but also of the original cost or value of it. Because of the refusal to consider the latter evidence, we think the order unlawfully arrived at. The Commission's report makes but scant reference to value, and that reference is only by way of makeweight. It goes rather on the idea that the case is controlled by the cash expenditures of the Coast Line Company.

For these reasons we think the order must again be set aside and the matter reopened for further consideration by the Commission.