## MAHER v. UNITED STATES et al.

District Court, D. Oregon.

June 16, 1938.

William L. Harrison and Edward O. Doxey, both of Portland, Or., for plaintiff.

Elmer B. Collins, Sp. Asst. to Atty. Gen., and Nelson Thomas, Atty. for Interstate Commerce Commission, of Washington, D. C., and Carl C. Donaugh, U. S. Atty., of Portland, Or., for defendants.

Before HANEY, Circuit Judge, and FEE and McCOLLOCH, District Judges.

JAMES ALGER FEE, District Judge.

This is a suit brought under Title 28, U.S.C.A. Section 41(28) and Sections 43–48 to set aside an order of the Interstate Commerce Commission made October 27, 1937, in a proceeding designated "MC 59620, Dan E. Maher Common Carrier Application." Maher as a common carrier of passengers and their baggage in interstate commerce over the route of U. S. Highway 99 and within territory contiguous thereto upon June 1, 1935, filed his application on or about January 1, 1936, for a certificate confirming his right under

the proviso of Section 206(a) of the Motor Carriers Act of 1935, 49 U.S.C.A. § 306(a)[1]. The form of the application is not before the Court but it is set up in the complaint and admitted that "petitioner, by application filed on or about the 1st day of January, 1936, with said defendant Commerce Commission, sought a certificate of public convenience and necessity, authorizing petitioner to operate as a common carrier by motor vehicle of passengers and their baggage over U. S. Highway No. 99, between Portland, Oregon and Seattle, Washington, and intermediate points thereof". It is also alleged and admitted that plaintiff "is a common carrier by motor vehicle, engaged in interstate operations over U. S. Highway No. 99, between Portland, Oregon and Seattle, Washington, and through various intermediate points, transporting passengers for the general public for compensation from each of the aforesaid cities to the other, and from various points within each of the states of Washington and Oregon, to points within other of said states, and in this respect petitioner alleges that he was in bona fide operation as a common carrier by motor vehicle between said cities on June 1, 1935, and that by reason of such operation this petitioner is, and was at all times herein mentioned entitled as a matter of right and law, under the provision of Section 206(a) of the Motor Carrier Act of 1935, known as the 'Grandfather' clause thereof, to have issued to him by the defendant Commerce Commission, a certificate of public convenience and necessity, authorizing such operation". The facts contained in this allegation are admitted by answer.

Upon the filing of said application the matter was referred for hearing to Joint Board No. 45 by the Commission. The Public Utilities Commissioner of Oregon, certain railroads and bus companies were permitted to intervene and oppose the granting of the application. The Commission found that Maher had been, since 1931, conducting a quite irregular transportation of passengers in interstate commerce between Oregon and Washington, continuously to the date of the filing of his application and thereafter until May 29, 1936. The Commission noted that the transportation was authorized under an "anywhere-for-hire" license issued by the Public Service Commission of Oregon and

apparently recognized by the authorities of Washington. The bona fides of the operation is established by the facts found. But the Commission held that long after Maher had filed his application for a certificate before it he had begun operation on a regular schedule of a passenger service over the same route and within the same territory and thereafter no longer proceeded with transportation on an irregular schedule as he had done before. It was further found that all Maher's operations in interstate commerce were "probably" over a "route" U. S. Highway 99, whether on the one hand the transportation was "anywhere-for-hire" from Portland, Oregon, to Deep River, Cathlamet, Raymond, Aberdeen, Fall City, La Salle River, Chehalis, Olympia, Seattle, Centralia, Neah Bay, Greenwood, Port Ludlow, and Spokane, all of which points are in the State of Washington and can best be reached from Portland over U. S. Highway 99, or, on the other hand, on regular schedule between Portland, Oregon, and Seattle, Washington, as fixed termini, since both these points are on U. S. Highway 99. The Commission findings also show that all Maher's operations in interstate commerce were "within a territory", viz., the territory between Portland, Oregon, and Seattle, Washington, and contiguous to U. S. Highway 99.

The Commission concluded that by instituting a regular route with fixed termini the applicant had abandoned his irregular operations. Based upon this conclusion an order was issued in the following terms:

"Investigation of the matters and things involved in this proceeding having been made, and said division on the date hereof, having made and filed a report containing its findings of fact and conclusions thereon, which report is made a part hereof:

"It is ordered, That said application, be, and it is hereby, denied, effective December 10, 1937.

"And it is further ordered, That applicant be, and he is hereby, notified and required to cease and desist, on or before December 10, 1937, from all operation in interstate or foreign commerce as a common carrier of passengers and their baggage by motor vehicle."

This order the plaintiff prays this court to set aside in the present suit. The

---

[1] All subsequent section references are to the law as codified in United States Code Annotated.

cause was tried before a statutory court. No evidence was introduced except a copy of the findings of the Commission which are accepted as the facts.

■ This court has jurisdiction to enjoin, set aside, annul or suspend in all or in part any order of the Interstate Commerce Commission, Title 28, U.S.C.A., Section 41, Subdivision 28, but the findings of the Commission are conclusive and cannot be assailed "in the absence of the evidence upon which they were made". Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 54 S.Ct. 692, 693, 78 L.Ed. 1260. No court, of course, should review a determination which was exclusively within the scope of the power and the discretion of the Commission, or substitute the judgment of the court as to wisdom of the order. Such matters are beyond the province of this tribunal. In this case, the evidence taken before the Commission was not produced, and cannot be considered, and this court, therefore, makes no attempt to review the record or establish independent conclusions as to its weight or sufficiency.

But the facts are here set up in the Commission's order and may be considered in the determination of the questions of law. The orders of the Commission are final unless (1) beyond the power which it can constitutionally exercise; (2) beyond its statutory right; or (3) based upon mistake of law. Interstate Commerce Commission v. Union Pacific Railroad Co., 222 U.S. 541-547, 32 S.Ct. 108, 111, 56 L.Ed. 308. Thus it may be set aside where the facts are established if "in violation of the constitutional prohibition against taking property without due process of law", or if the Commission acted "so arbitrarily and unjustly as to fix rates contrary to evidence, or without evidence to support it", or "if the authority therein involved has been exercised in such an unreasonable manner as to cause it to be within the elementary rule that the substance, and not the shadow, determines the validity of the exercise of the power". See Interstate Commerce Commission v. Union Pacific Railroad Co., supra. "A conclusion which plainly involves, under the undisputed facts, an error of law" may be set aside. McLean Lumber Co. v. United States, D.C., 237 F. 460, 469.

Upon the facts found by the Commission, it is to be determined whether (1) a certificate should have been issued to Maher, (2) whether a cease and desist order should have been promulgated.

As to the issuance of the certificate, the Commission fell into three errors of law; first, because it refused issuance under the terms of the proviso of the section concluding that he had no "regular" route on June 1, 1935; second, in concluding that a change from an "anywhere-for-hire" to a fixed termini operation destroyed Maher's right to a certificate notwithstanding all of his transportation was over the same route and within a definite territory; and third, by failing to consider the application under the terms of section 307.

■■ As to the first point, the Commission confused its functions. It confused the diverse terms upon which the two different types of certificates are to be issued. There was an attempt in its conclusions to import the requirement of "regular routes" and "fixed termini" applicable only to certificates under Section 307 into the language of proviso 306(a) and to make the failure of the applicant to have a "regular route" and "fixed termini" prior to June 1, 1935, a foundation for the absolute denial of the certificate and of the right to operate in interstate commerce at all.

The statute permits two different forms of applications for certificates relating to the transportation of persons or property for hire in interstate commerce. The first is by one who has been in bona fide operation in interstate commerce for a certificate to continue "over the route or routes or within the territory for which application is made", under the proviso of Section 306(a). The other is an application by any qualified person for a certificate of public necessity and convenience to perform a proposed service as common carrier by motor vehicle, under Section 307. Section 308 refers to this differentiation but establishes uniform provisions for both types of certificates. Under Section 306(a) if the applicant cannot prove operation under the terms of the proviso, the application is to be treated as if it were tendered under Section 307. Confusion between these two diverse forms of application and also between the certificate confirming the rights accrued by an operation conducted in the past and the certificate of public necessity and convenience for future operations appears not only in the briefs but also the findings and conclusions of the Commission.

The second type of application is for a certificate by one not previously operating under the conditions prescribed by the act, and relates only to future operations.

It is under the terms of the statute not to be issued to common carriers of passengers (1) "over other than a regular route or routes", (2) "and between fixed termini", (3) except for "special or charter operations" and is never to be issued (4) unless the service "is or will be required by the present or future public convenience and necessity". Section 307. The certificate confirming the rights gained by past operations and accepting previous operation as a substitute for a finding of public necessity and convenience, on the other hand, is to be issued (1) upon a finding of bona fide operation before June 1, 1935, (2) continued since that time, (3) "over a route or routes or within the territory for which application is made". Section 306(a). Congress did not in this section require a limitation to "regular" route or routes or between "fixed termini" nor make an exception as to charter or special operations. Neither was an actual "public convenience and necessity" requisite, since Congress deemed the previous actual operation guaranteed the necessity and convenience of the public.

By the proviso of Section 306(a), Congress contemplated the continuance of any service by motor vehicle in interstate transportation, whether regular or irregular, seasonal or continuous, actually requisite or not. The purpose is plain. Congress was protecting the property and business of those previously engaged in bona fide transportation of persons and property by motor vehicle in interstate commerce. The proviso of Section 306(a) set up a scheme for registration of special carriers without destroying their rights or their business. On the other hand, Section 307 provided definite limitations upon the operations of the persons who may in the future desire to obtain the privilege of conducting such operations.

The conclusion of the Commission makes clear the fallacy:

"We find that applicant has failed to establish that he was in bona fide operation as a common carrier by motor vehicle of passengers and their baggage between Portland, Oreg., and Seattle, Wash., over a regular route on June 1, 1935, and that he has so operated since that time."

This conclusion contains a negative pregnant because the facts found are that Maher was in bona fide operation as a common carrier by motor vehicle of passengers and their baggage over "a route", U. S. Highway 99, on June 1, 1935. Nowhere in the findings of fact is it suggested that Maher's operations were not bona fide. It is unquestioned that such operations before May 29, 1936, were not over a "regular" route between Portland, Oregon, and Seattle, Washington. This prerequisite to confirmation of existing rights is that the person who made application "was in bona fide operation as a common carrier by motor vehicle on June 1, 1935, over the route or routes or within the territory for which application is made and has so operated since that time". 306(a). Bona fide operation over a route or over a number of routes or within a territory is thus the primary essential. The intention to include all types of operation is made clear by the fact that the applicant was not confined to a route or routes but was to be qualified if he operated within a territory. Further, it is indicated that a certificate was not only to be issued for a regular route, but also for irregular routes, for "common carrier" is defined in this particular as a person who transports persons and passengers "whether over regular or irregular routes". 303(a)(14). This phrase was used not to make a dichotomy between these types of service, but to mark clearly the all embracing purpose of Congress. The law further goes to the extent of recognizing seasonal service by motor vehicle in interstate commerce. 306(a). The distinction that the Commission attempted to draw is made clearer by another finding as follows:

"When applicant instituted regular-route service between Portland and Seattle it appears that he discontinued the so-called anywhere-for-hire operations theretofore conducted."

But both the "anywhere-for-hire" operations which were begun in 1931 and continued at least until the initiation of the service between Portland and Seattle in May, 1936, and the operation with "fixed termini" then begun and continuing to date, were "over a route", U. S. Highway 99 between these two points, and "within a territory", viz., that territory reached over U. S. Highway 99 and between Portland and Seattle. Maher made application for this route and this territory according to the pleadings.

Commissioner Lee points out:

"This applicant has been engaged in the interstate transportation of passengers, as a carrier by motor vehicle, since 1931. Un-

der the 'grandfather' clause of the Motor Carrier Act, 1935, he is entitled to continue to operate. * * * By the 'grandfather' clause, it was sought to protect carriers in their existing operations."

In the second place, the Commission concluded that because the applicant had changed the type of his operation from an "anywhere-for-hire" service, using U. S. Highway 99 in interstate commerce, to an operation with the "fixed termini" Portland and Seattle over the same highway, that the operation was not a continuous one.

It is true the act also provides that the operation must have been continued. But the law does not denounce a change of one type of service to another. Apt words could have been used if this were the intention. Undoubtedly, the applicant would be confined to the exact service which he was furnishing on June 1, 1935. However, if one who had been operating a line in May and June of each year prior to June 1, 1935, had thereafter extended his service upon a year around basis, it could not be argued that he abandoned the seasonal service. Similarly, if he had thereafter operated for eleven months and in every month except May, he might have abandoned the month of May and might even be confined to transportation in June, alone, but he could not entirely be denied a certificate. So Maher might well be confined to an "anywhere-for-hire" service upon U. S. Highway 99 and compelled to cease his "fixed termini" operation, but he was still operating in interstate commerce over a route and within a territory and could not, therefore, be denied a certificate. The establishment of a "fixed termini" operation could be deemed an abandonment of a claim for an "anywhere-for-hire" service in the same territory since the act provides:

"Any common carrier by motor vehicle transporting passengers under a certificate issued under this chapter may transport in interstate or foreign commerce to any place special or chartered parties under such rules and regulations as the Commission shall have prescribed." Sec. 308(c).

Upon the facts, a distinction between a regular and an irregular route vanishes. The Commission found that all Maher's operations in interstate commerce were probably in part over U. S. Highway 99. This highway, then, is established for part of the distance, at least, as a regular route. It will be noticed that a regular schedule is not mentioned in the definition. If it

be held that Maher is no longer entitled to operate over other routes than U. S. Highway 99, he certainly never abandoned his right to serve the public upon that road. If, on June 1, 1935, he was performing an "anywhere-for-hire" service, it is inconceivable that he forfeited that right by placing his busses on schedule between "fixed termini" on that road so that those persons who wished to go to any point thereon for hire could do so without making special arrangements. In other words, if he be held to have abandoned his rights on other routes, his operation on U. S. Highway 99 after May 29, 1936, was an attempt to increase his service thereon rather than to abandon it. But the fact that the Commission by certificate might only authorize an "anywhere-for-hire" service in the territory contiguous to U. S. Highway 99 and falling short of Seattle and compel him to cease operations over other highways altogether did not constitute a justification for its denial of his right to service at all.

The statute gives it sufficient power by the terms of the certificate which it should have issued to protect any type of operations, for it may "specify the service to be rendered and the routes over which, the fixed termini, if any, between which, and the intermediate and off-route points, if any, at which, and in case of operations not over specified routes or between fixed termini, the territory within which, the motor carrier is authorized to operate" and could attach "to the exercise of the privileges granted by the certificate such reasonable terms, conditions, and limitations as the public convenience and necessity may from time to time require". Section 308. The Commission in many cases has heretofore exercised the power conferred upon it by granting the certificate applied for and imposing limitations. The cases of Hibbing, etc., Common Carrier Application, 1 M.C.C. 540; George Cassens, etc., Application, 1 M.C.C. 771; Slagle Contract Carrier Application, 2 M.C.C. 127, are illustrative of such action. In these cases the certificate was granted but delimited in terms in accordance with the previous business of the carrier.

The Commission further did not perform its full duty with regard to Maher. The law provides that if any applicant does not qualify as one who was "in bona fide operation as a common carrier by motor vehicle on June 1, 1935 * * * and has

816

so operated since that time * * *" then the Commission must go further and find whether or not the applicant qualifies under Section 307. The particular language used is contained in Section 306(a) and reads as follows: "Otherwise the application for such certificate shall be decided in accordance with the procedure provided for in section 307(a) of this chapter and such certificate shall be issued or denied accordingly." The Commission made no finding as to whether the "proposed service * * * is or will be required by the present or future public convenience and necessity" as required by the latter section. 307(a). That body apparently entirely disregarded this clause because no reference is made to it in the opinion or in the order. The briefs filed by the counsel for the Commission indicate clearly this attitude for they insist that it was the duty of Maher to file a new application under Section 307.

It is true that the Commission is given the power to fix by regulation the form of application for certificate but it would have no authority to abrogate the section of the statute under discussion by requiring two different applications. The intent of Congress was to permit no operation by an applicant after certificate had been denied, and it was, therefore, intended that all possibility should be exhausted on the one application. No assumption is necessary to arrive at this conclusion, since Congress require affirmative action by the Commission. The Commission thus acted contrary to the statute in denying a certificate where it failed to make jurisdictional findings of fact.

The Commission, therefore, took action not permitted to it by the law. All the facts required by Congress for the issuance of a certificate under the proviso of 306(a) were found. The issuance was, therefore, mandatory. The Commission failed to issue a certificate because two erroneous conclusions of law were drawn, first, that an operation in interstate commerce "over a route" and "within a territory" was not entitled to protection when not over a regular route and between fixed termini, and second, that an irregular operation in interstate commerce was abandoned where a regular operation over the same route and within the same territory was carried on. The applicant was further denied rights by the Commission since that body failed to consider his application "in accordance with

the procedure provided for in section 307(a)".

Based upon these erroneous interpretations, the Commission issued a "cease and desist order". This power was conferred upon that body by the statute under certain circumstances, Sec. 304(a) (6). But it was not the intention of Congress that when an applicant attempted to have his rights confirmed by a prayer for a certificate, the Commission should be empowered to issue an injunction. "As the Congress itself could not be, so it cannot make its agents be, the final judge of its own power under the Constitution. Congress has no power * * * to prescribe what constitutes due process of law for its ascertainment." Baltimore & O. Railroad Co. v. United States, 298 U.S. 349, 56 S.Ct. 797, 805, 80 L.Ed. 1209. Judicial action is required before the Commission could enforce the provisions of the statute designed to prevent operation without a certificate, Sec. 305(h); United States v. Griffin, Receiver, 58 S.Ct. 601, 82 L.Ed. ——, February 28, 1938, United States Supreme Court. This action in issuing a "cease and desist" order was unquestionably affirmative. Maher was commanded to cease an operation which the statute gave him the right to continue. Further, not only the "cease and desist" order but also the denial of certificate was affirmative.

The operation is not illegal under the statute while the application for a certificate is pending. Once certificate is denied by a valid order the operation becomes a crime. This is one of the distinguishing features between the case at bar and Lehigh Valley Railroad Company v. United States, 243 U.S. 412, 414, 37 S.Ct. 397, 61 L.Ed. 819. There the risk arose from the statute itself. Here there is no risk of criminality until a certificate has been denied by valid order.

In Powell v. United States, 300 U.S. 276, 285, 57 S.Ct. 470, 475, 81 L.Ed. 643, the Commission struck out a tariff filed by the railroad whereby it included rates relating to a station which it was contended was not upon its line. The court says, in holding the order affirmative in effect, "the order * * * confines the Seaboard's service within the junction switching limits, denies leave to that carrier to furnish, and prevents it from furnishing transportation to and from Fort Benning". In the instant case, by refusing to grant the certificate upon the facts found, the Com-

mission would deny leave to plaintiff to furnish and would prevent it from furnishing transportation over U. S. Highway 99 in accordance with its previous service. This case is stronger than the Powell Case for here the plaintiff was in actual operation legally before the statute took effect. A railroad has no legal right to operate an extension without a certificate based on a finding of public necessity and convenience. In the absence of the certificate, here the act of operation becomes a crime and is punishable. See Claiborne-Annapolis Ferry Co. v. United States, 285 U.S. 382, 391, 392, 52 S.Ct. 440, 442, 443, 76 L.Ed. 808.

The suspension of the order denying the certificate, then, would not leave the situation unchanged but would allow the plaintiff to continue in operation as he has done in the past. By annulment or suspension of the order, the plaintiff would have protection of those rights which Congress sought to confirm. Alton Railroad Co. v. United States, 287 U.S. 229, 240, 53 S.Ct. 124, 128, 77 L.Ed. 275. On the other hand, immediately upon the order becoming final, the plaintiff will be subjected to damage which is "substantial, immediate, and irreparable". Alton Railroad Co. v. United States, supra. The business of plaintiff, which, although subject to regulation, was heretofore carried over the highways of Oregon and Washington with the consent of the states involved (Compare Buck v. Kuykendall, 267 U.S. 307, 45 S.Ct. 324, 69 L.Ed. 623, 38 A.L.R. 286) is of substantial right and "the unnecessary and uncompensated taking or destruction of any private property, legally acquired and legally held" is unauthorized. Reagan v. Farmers' Loan & Trust Co., 154 U.S. 362, 14 S.Ct. 1047, 38 L.Ed. 1014, cited in Baltimore & O. Railroad Co. v. United States, 298 U.S. 349, 56 S.Ct. 797, 806, 80 L.Ed. 1209; Alton Railroad Co. v. United States, supra. Even a temporary cessation of operation by plaintiff would cause loss of patronage and might destroy his business. The whole order in this case, therefore, is affirmative in its effect and displays the intention of the Commission to cut off the rights which the Congress itself granted to the plaintiff. Therefore, the court must go behind the assigned grounds and determine the validity of the order independently. Wallower v. United States, D.C., 32 F.2d 524.

Inquiry as to what action the court should take under these circumstances must be made next. The order, to cease, and desist from all operation in interstate commerce, at least, must be set aside. Since the statute gives the court the power to annul an order in whole or in part, it makes no difference whether severable or not, it may be annulled. It is said to create an anomalous situation, if the "cease and desist" order be set aside while the provisions of law prevent the plaintiff from operating after the refusal of the certificate. See Chesapeake & Ohio Railway Company v. United States D.C., 35 F.2d 769, 773. But such a situation cannot arise, since the paragraph denying the certificate is likewise affirmative in effect, and action should be taken in regard to it, also. It is said that this court, at least, has no power to compel the Commission to issue the certificate either by mandatory decree (Piedmont & Northern Railway Co. v. United States, 280 U.S. 469, 50 S.Ct. 192, 74 L.Ed. 551) nor can the court, itself, issue the certificate, because the various limitations upon the terms of such a certificate are committed to the discretion of the Commission under Section 308. See The Chicago Junction Case, 264 U.S. 258, 264, 44 S.Ct. 317, 319 68 L.Ed. 667. The answer to this proposition is found in Alton Railroad Company v. United States, supra, where it is said (page 127): "The court is not asked to prescribe reasonable divisions, or to direct that they be prescribed by the Commission. The court is asked to find that the Commission denied the Alton a constitutional right as a result of acting upon erroneous principles of law, and therefore to enjoin that part of the order."

The court has the power to suspend an order of the Commission. Cf. Atlanta, B. & C. R. Co. v. United States, D.C., 37 F. 2d 401; United States v. Atlanta, B. & C. R. Co., 282 U.S. 522, 527, 51 S.Ct. 237, 238, 75 L.Ed. 513. If this paragraph, denying the certificate, were suspended, the application would still be pending, and the plaintiff would have the right to operate until the Commission granted or refused the application under the terms of the statute which provides "pending the determination of any such application the continuance of such operation shall be lawful". Sec. 306(a). The illegality of the operation which would be occasioned by the denial of the certificate would not then exist until further action was taken. The Commission could thereupon either upon

further hearing or upon the record now in its possession grant to plaintiff a certificate delimited under the terms of the statute or deny the certificate upon findings which would conform with the statutory requirements. Until such action is taken, the terms of paragraph one of the order, denying certificate, are suspended. Paragraph two of the order, commanding Maher to cease and desist from further operations in interstate commerce, is set aside.

McCOLLOCH, District Judge (specially concurring).

I desire to express my special approval of that part of Judge FEE'S opinion to the effect that whatever rights a carrier had as of June 1, 1935, should be respected and declared by the Interstate Commerce Commission, and certificate issued for the same. It would be a harsh rule to deny an applicant all rights simply because he claimed more or even a different right than he was entitled to. The extension of the jurisdiction of the Interstate Commerce Commission into the field of motor transportation is new and advanced legislation, and the Act should be construed to avoid injustice to the many small operators engaged in making their living in this field at the time the law went into effect.

HANEY, Circuit Judge.

I dissent.

First. Defendants challenge the jurisdiction of this court. Under the statute, our jurisdiction extends to "cases brought to enjoin, set aside, annul, or suspend in whole or in part any order of the Interstate Commerce Commission". 28 U.S.C.A. § 41(28). The words "any order", as there used, mean "any affirmative order". Procter & Gamble Co. v. United States, 225 U.S. 282, 293, 294, 32 S.Ct. 761, 56 L.Ed. 1091; United States v. Griffin, 58 S.Ct. 601, 82 L.Ed. ——, February 28, 1938. That part of the order which denies the application for a certificate of public convenience and necessity is, I believe, an order which is negative in substance and form, over which we have no jurisdiction. Piedmont & N. Ry. Co. v. United States, 280 U.S. 469, 50 S.Ct. 192, 74 L.Ed. 551.

No contention is here made that we have jurisdiction under § 205(h) of the act, 49 U.S.C.A. § 305(h). (See Coordinator Eastman's memorandum to the Senate Interstate Commerce Committee suggesting amendments to Senate Bill 1639, which is the act in question.)

Under the express words of the statute, however, our jurisdiction extends to part of an order. Petitioner contends that the cease and desist part of the order is affirmative.

I believe a cease and desist order is ordinarily subject to review by this court. The Tap Line Cases, 234 U.S. 1, 34 S.Ct. 741, 58 L.Ed. 1185.

Defendants contend, however, that the order is not separable because the action of the court would result in an anomalous situation, and rely on Chesapeake & Ohio Ry. Co. v. United States, D.C. W.Va., 35 F.2d 769, affirmed 283 U.S. 35, 51 S.Ct. 337, 75 L.Ed. 824. That case does not hold that in such situation the order is not reviewable, and in fact is not in point, because there the statute made "no specification of the considerations by which the Commission is to be governed in determining whether the public convenience and necessity require the proposed construction." 283 U.S. 35, 42, 51 S.Ct. 337, 339, 75 L.Ed. 824. Here the Commission had no such latitude and discretion, for it was required to issue the certificate on proof of specified facts.

Since the order was a command to petitioner, I believe it is an affirmative order, and within our jurisdiction.

Second. The extent of our reviewing powers is stated in Interstate Commerce Commission v. Union Pacific R. Co., 222 U.S. 541, 547, 32 S.Ct. 108, 111, 56 L.Ed. 308. So far as is here material, the order in question is final, unless "based upon a mistake of law" under that case. There is no dispute as to the facts. Petitioner was on June 1, 1935, in operation on irregular routes within the territory for which application was made. The Commission construed the act to mean that petitioner was not entitled to a certificate covering a route between fixed termini, unless he was operating on a regular route on and since June 1, 1935, and defendants contend that such construction was correct.

I believe the Commission has not misconstrued the act. The "carrier" referred to in § 306(a) is defined in § 303(a)(14) to include those which operate "over regular or irregular routes". The fact that petitioner, on June 1, 1935, was operating over an irregular route, does not prevent issuance of a certificate, because of that stat-

ute. Under § 306(a) petitioner is entitled to a certificate "if [he] * * * was in bona fide operation * * * on June 1, 1935, over the route or routes or within the territory for which application is made and has so operated since that time * * *." Petitioner although he was in bona fide operation on June 1, 1935, over an irregular route, has not "so operated since that time" because he commenced operations over a regular route on May 29, 1936, and has continued. In other words, I believe the statute means that if a carrier was operating over a regular route on June 1, 1935, he must have so continued after that date in order to obtain a certificate under § 306(a); and that if a carrier was operating over an irregular route on June 1, 1935, he must have so continued after that date to obtain such a certificate.

Third. By 49 U.S.C.A. § 306(a), the Commission must issue a certificate upon proof of certain facts. If such facts are not proven, then "the application for such certificate shall be decided in accordance with the procedure provided for in section 307(a) of this chapter and such certificate shall be issued or denied accordingly". Under the latter section proof of different facts is required before a certificate shall be issued. There is here no allegation in the bill that there was proof of such facts. There were no findings made by the Commission of the required facts. The evidence is not before us. Under such circumstances, we should presume that the Commission performed its duties and therefore refused to grant a certificate under § 307(a) because there was no showing of the required facts. I do not believe we should declare that the Commission should have determined the application under § 307(a) when we do not know whether there was any evidence before it to consider.

Fourth. Did the Commission have power to make the cease and desist order? I think that it had such power. Under § 306(a) such a carrier may not operate without a certificate of public convenience and necessity. Violation of that section is made a crime. § 322(a). Express power to make the order is given by § 304(a)(6) which provides:

"It shall be the duty of the Commission —* * *

"(6) To administer, execute, and enforce all other provisions of this chapter, to make all necessary orders in connection therewith, and to prescribe rules, regula-

tions, and procedure for such administration * * *."

For these reasons I think the bill should be dismissed.