## JOHNSON v. UNITED STATES et al.
### Civil No. 520.

District Court, D. Oregon.
Sept. 22, 1941.

J. M. Hickson and Will H. Masters, both of Portland, Or., for plaintiff.

C. Laird McKenna, Asst. U. S. Atty., of Portland, Or., Frank Coleman, Sp. Asst. to Atty. Gen., and Nelson Thomas, Office of Chief Counsel, Interstate Commerce Commission, of Washington, D. C., for defendant.

Before HANEY, Circuit Judge, and FEE and McCOLLOCH, District Judges.

HANEY, Circuit Judge.

Plaintiff has filed this action to set aside an order of the Interstate Commerce Commission. The issues hereinafter discussed arise from the denial by defendants of allegations in the complaint.

A. Fornaciari commenced operating as a common carrier by motor vehicle between Seattle and Los Angeles in January, 1935. On February 7, 1936, he applied for a certificate of public convenience and necessity under § 206(a) of the Motor Carrier

Act, 1935, 49 U.S.C.A. § 306(a), commonly called the "grandfather clause", authorizing continuance of operation as a common carrier by motor vehicle, or, in the alternative, a permit as a contract carrier by motor vehicle, of general commodities between points in California, Oregon and Washington, over irregular routes. On June 7, 1937, the Commission approved the substitution of Williams Brothers, Inc., as the applicant in lieu of Fornaciari who had sold his rights to the former. Williams Brothers, Inc., went into bankruptcy and on April 18, 1940, plaintiff purchased from the bankrupt estate whatever rights the bankrupt had in the operation for which a certificate was sought.

The Commission found that from February, 1937, to June, 1937, Fornaciari handled only traffic solicited by and turned over to him by Hendricks, another operator, and that thereby he had abandoned his own operations as a common carrier.

Section 206(a) of the Motor Carrier Act, 1935, 49 U.S.C.A. § 306(a), prohibits any common carrier by motor vehicle from engaging in interstate operation on any public highway unless such carrier has a certificate of convenience and necessity issued by the Commission. A proviso requires the Commission to issue the certificate without further proof of public convenience and necessity "if any such carrier or predecessor in interest was in bona fide operation as a common carrier by motor vehicle on June 1, 1935, over the route or routes or within the territory for which application is made and has so operated since that time".

The Commission held that Fornaciari had not "so operated since" June 1, 1935, because his operations from February, 1937 to June, 1937, did not show that he was "in bona fide operation as a common carrier by motor vehicle" during that time, as those terms are defined by § 203(a) (14) of the act, 49 U.S.C.A. § 303(a) (14), which provides in part: "The term 'common carrier by motor vehicle' means any person who or which undertakes, whether directly or by a lease or any other arrangement, to transport passengers or property, or any class or classes of property, for the general public in interstate or foreign commerce by motor vehicle for compensation, whether over regular or irregular routes * * *." The Commission held that such service "was not the fulfillment of engagements in consequence of a holding out to the gener-

al public but was primarily the hauling of traffic for motor common carriers" and concluded that the applicant had abandoned his operations as a common carrier and assumed the position of an "owner-operator".

Plaintiff first contends that even if Fornaciari did restrict his business to that supplied by Hendricks, still he was within the definition of "common carrier by motor vehicle" because although he got the traffic from Hendricks, he was transporting it "for the general public", meaning for those who supplied such traffic to Hendricks.

The Commission has taken the position that the person entitled to a license is the one who holds himself out to the general public. For example, it is said where such a person solicits and obtains traffic and employs another under "lease or any other arrangement" to physically transport such traffic, that Congress did not intend that two licenses should be issued for the one operation. The Commission has, therefore, taken the view that only one license should be issued, and has decided that the one who is entitled to the license, is the one dealing with the general public. We are required to give the administrative construction great weight (United States v. American Trucking Ass'ns, 310 U.S. 534, 549, 60 S. Ct. 1059, 84 L.Ed. 1345), and doing so, we cannot say the Commission's interpretation is erroneous. Compare: N. E. Rosenblum Truck Lines v. United States, D.C.Mo., 36 F.Supp. 467.

Plaintiff also contends that the Commission's finding that the traffic carried by Fornaciari originated with Hendricks is not sustained by substantial evidence. There was evidence from which the Commission might have made a finding favorable to plaintiff. There was other evidence explaining that favorable to plaintiff and which, if believed, led to an opposite result. The Commission reached the latter conclusion, and its determination of such conflict in the evidence is conclusive here. Shields v. Utah Idaho Cent. R. Co., 305 U. S. 177, 185, 59 S.Ct. 160, 83 L.Ed. 111.

Finally, it is contended that § 206(a) of the act requiring the same operation after June 1, 1935, as was being carried on at that time, is limited to the period from June 1, 1935 to the effective date of the act or to the period from June 1, 1935, to the date the application for a license was filed. We believe the period extends from June 1, 1935, to the date "when the Com-

mission passed upon the application" for the license. United States v. Maher, 307 U.S. 148, 155, 59 S.Ct. 768, 772, 83 L.Ed. 1162.

Complaint dismissed.

JAMES ALGER FEE, District Judge (concurring in result).

The Motor Carrier Act of 1935 contains provisions to subject the business of common carriers of goods or passengers by motor vehicle to administrative regulation by the Interstate Commerce Commission. That body was directed to issue certificates, confirming the operations of any carrier "if any such carrier or predecessor in interest was in bona fide operation as a common carrier by motor vehicle on June 1, 1935, over the route or routes or within the territory for which application is made and has so operated since that time" without further proof of public convenience and necessity. In the absence of controlling authority, these basic provisions relating to existing businesses engaged in interstate transportation by motor carrier seem to indicate that property rights of the existing carriers were recognized and confirmed by these clauses of the legislation and that the power conferred upon the commission in respect thereto is judicial, rather than administrative.

The Commission have, however, treated such determinations as legislative or administrative questions and have by interstitial legislation established distinctions and tests relating to these property rights which Congress did not expressly authorize. By so doing, it would seem that the Commission have actually been influenced by their concept of public necessity and convenience which the act expressly removes from their consideration with respect to carriers operating on June 1, 1935. By drawing distinctions as technical as those of the common law relating to pleadings or contingent remainders, the Commission seem thus to have substituted tests of administrative convenience established after the immunizing period has passed in place of the test laid down by Congress to satisfy the dictates of fairness.

There is no clause of the act which provides that one who has been transporting goods in interstate commerce on and since June 1, 1935, must have dealt directly with the shippers and himself issued bills of lading. But the Commission were apparently influenced by their ideas that public policy required that no more than one "grandfather" certificate should be issued for a single operation. This determination seems to wipe out property rights of a small operation which Congress sought to preserve.

Numerous other instances of like determinations could be cited.[1]

The tendency of the Commission, influenced by such considerations, to eliminate the smaller or more irregular operator from the field, the seeming injustice of drawing distinctions by interstitial interpolation to serve administrative convenience, the apparent evil of permitting the Commission to extend the immunizing period for over five years and then to destroy a business existing at the date of the approval of the statute not upon a broad survey of the record of operation as a whole but upon a deviation which did not continue more than four months, the patent injustice of using a test which at the time of the event had not been called to the attention of the carrier by express terms of the governing statute nor foreshadowed by the decisions of the Commission itself are ably pointed out in the dissenting opinion of my colleague, Judge Claude McCOLLOCH.

However, a consideration of the holding in a previous case is vital here. That cause was commenced by an application of one Maher for a certificate under the terms of the Motor Carriers Act of 1935. The issuance of a certificate was denied upon the ground that Maher had "abandoned" an "anywhere-for-hire" operation mainly conducted over United States Highway 99 in Oregon and Washington, when upon May 29, 1936, after the effective date of the act, he began regular runs over the same route between Portland and Seattle. The Commission thereupon issued a cease and desist order which prevented Maher from operating as a common carrier by motor ve-

---

[1] See Welsh Common Carrier Application, 23 M.C.C. 404; N. E. Rosenblum Truck Lines v. United States, D.C., 36 F.Supp. 467, 469 (requirement that a common carrier must deal directly with shippers); Carolina Freight Carriers Corp. Common Carrier Application, 24 M.C.C. 305, 308 (requirements in regard to transportation of general commodities over irregular routes seem to involve considerations of public necessity and convenience); Terre Haute Union Transfer & Storage Co., Contract Carrier Application, 23 M.C.C. 653, 656 (distinctions as to ownership and control of corporations applying for separate operating rights).

hicle under any circumstances. Thereby the Commission destroyed the right of Maher to operate, although he was a bona fide common carrier by motor vehicle in interstate commerce on June 1, 1935, and admittedly was still a bona fide common carrier by motor vehicle in interstate commerce at the date of the Commission order October 27, 1937, over the same route or routes and within the same territory.

Upon hearing in the District Court this cease and desist order was suspended until the Commission should consider whether Maher should not have confirmed his rights as an "anywhere-for-hire" operator under the "grandfather" clause and further until the Commission should consider whether "public convenience and necessity" did not warrant the continuance of his operations.[2] The prevailing opinion held that the policy of the act was to grant rights to common carriers by motor vehicle in interstate commerce in the period between June 1, 1935, the date set in the statute, and August 9, 1935, the effective date of the act, and that the Commission could not destroy these rights by administrative considerations nor by giving weight to events which occurred long after the effective date of the act and thus, beyond the period of immunization.

In reversing the result arrived at by the majority in the District Court, the Supreme Court followed the conclusions attained by Circuit Judge Haney, who wrote the dissenting opinion. The Supreme Court say: "Congress responded to the felt need for regulating interstate motor transportation through familiar administrative devices, while at the same time it satisfied the dictates of fairness by affording sanction for enterprises theretofore established. Whether an applicant seeking exemption had in fact been in operation within the immunizing period of the statute was bound to raise controverted matters of fact." United States v. Maher, 307 U.S. 148, 153, 59 S. Ct. 768, 771, 83 L.Ed. 1162.

The announcement of this doctrine placed all the existing businesses which Congress sought to preserve in the spirit of fairness beyond the scope of judicial consideration by drawing about such controversies the magic circle of "questions of fact". It may be pointed out that a con-

sistent policy in determination of questions of fact has in reality the force of a rule of law.[3]

However, this court without obvious rationalization cannot fail to recognize the proposition that the Supreme Court has declared that these are questions of fact and not of law, nor the axiom that upon questions of fact the judgment of the Commission is final, no matter how arbitrary the result may seem.

Solely because a lower court should not attempt to reverse a policy laid down by the highest tribunal, when the pronouncement is plain, I concur in the result reached by Circuit Judge HANEY.

McCOLLOCH, District Judge (dissenting).

Even though it be true, as contended by counsel, that the modern decisions grant the unreviewable right to the Interstate Commerce Commission to interpret and apply the Motor Carrier Act to concrete situations, it does not follow that the Commission may exercise such power, judicial in nature, in a distinctly unjudicial manner. The statute gives "grandfather rights" to an applicant "if any such carrier or predecessor in interest was in bona fide operation as a common carrier by motor vehicle on June 1, 1935, * * * and has so operated since that time". More than five years after the grandfather date the Commission ruled that, because for a period of four months (February–June, 1937), the first of applicant's two predecessors in interest did not, in the opinion of the Commission, maintain his status as a common carrier, applicant was not entitled to a permit. In arriving at its decision, the Commission said it need not, and therefore did not, give any consideration to the carriers' operations either before or after the named period in 1937.

Whether an applicant and his predecessors have maintained bona fide status as a common carrier over a period of time is not to be determined by finding a flaw in the chain of operating title and then stopping there. Neither a title examiner nor a court in passing on title to real property would stop at a single flaw, and say, as the Commission said here, we need look no farther, we adjudge the title bad, what has

[2] Maher v. United States, D.C., 23 F. Supp. 810.

[3] Especially when administrative interpretation of the statute is given great weight. See United States v. American Trucking Ass'ns, 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345.

gone before or after is of no consequence. On the contrary, a defect in chain of title to real property would be appraised in its whole setting. So here, the claim of right to a permit under the Motor Carrier Act should have been determined on the basis of the full five years' operation, not solely on the basis of a selected few months. Analogies in the law could be multiplied where determination of status is involved. I would not expect any court in assessing conduct to hold that, because a suitor had done a particular thing that was bad, he was not entitled to have the good in his conduct considered and balanced against the bad.

The Motor Carrier Act, as I said in Maher v. United States, D.C., 23 F.Supp. 810, 818; Id., 307 U.S. 148, 59 S.Ct. 768, 83 L. Ed. 1162, affects the welfare of many small operators and should not be interpreted so strictly that slight deviation from perfect conduct works a loss of status.

I feel that the case should be remanded to the Commission for consideration of the full time of operation in determining whether there was bona fide common carrier operation subsequent to the grandfather date and to the date of hearing.