UNITED STATES ET AL. v. MAHER, DOING BUSINESS AS INTERSTATE BUSSES.

No. 432. Argued February 6, 1939.—Decided April 17, 1939.

---

*Mr. Hugh B. Cox,* with whom *Solicitor General Jackson, Assistant Attorney General Arnold,* and *Messrs. N. A. Townsend, Elmer B. Collins, Frank Coleman, Nelson Thomas, Daniel W. Knowlton,* and *Carl C. Donaugh* were on the brief, for appellants.

*Mr. William L. Harrison,* with whom *Mr. W. Lair Thompson* was on the brief, for appellee.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

The case is here on appeal, under § 238 of the Judicial Code as amended (28 U. S. C. § 345), to review a final

decree, setting aside an order of the Interstate Commerce Commission, granted by a district court of three judges under the Motor Carrier Act, 1935, (49 U. S. C. Supp. § 305 (h)), in connection with the Urgent Deficiencies Act of October 22, 1913 (28 U. S. C. §§ 45, 47a).

The application to the special facts of this case of what is colloquially known as "the grandfather clause" of the Motor Carrier Act is the substantive question at issue. There is a preliminary jurisdictional problem touching those phases of the relations of the Interstate Commerce Commission to the courts which are implied by the claim that the Commission had issued a "negative order."

Section 206 of the Motor Carrier Act, Act of August 9, 1935, 49 Stat. 543, forbids common carriers by motor vehicle subject to its provisions from engaging in interstate operations without a certificate of public convenience and necessity to be issued by the Interstate Commerce Commission under § 207 of the Act. "The grandfather clause" of § 206, however, provides that "if any such carrier . . . was in bona fide operation as a common carrier by motor vehicle on June 1, 1935, over the route or routes or within the territory for which application is made and has so operated since that time, . . . the Commission shall issue such certificate without requiring further proof that public convenience and necessity will be served by such operation."

On January 24, 1936, the appellee, Maher, filed an application under the "grandfather clause" for a certificate to engage in the transportation of passengers and baggage over U. S. Highway No. 99 between Portland and Seattle and intermediate points. After a hearing was had before a "Joint Board" composed of members from the states involved (§§ 203 (a) (4) and 205) at which competing carriers and the Public Utilities Commission of Oregon appeared in opposition to the application, and after a report was filed by the Joint Board with the Inter-

state Commerce Commission recommending that the application be denied, the Interstate Commerce Commission, Division 5, on October 27, 1937, found the facts to be as follows: From 1931 until May 29, 1936, the appellee had engaged in *bona fide* "anywhere-for-hire"operations in Oregon with occasional entries into Washington. There were rare trips to Seattle, no service at all to most of the intervening points, and no showing that passengers were transported on return trips to Portland. On May 29, 1936, the appellee began his regular-route service between Portland and Seattle which he conducted regularly since that time. But upon the institution of the regular-route service between Portland and Seattle the appellee discontinued the "anywhere-for-hire" operations theretofore conducted. Upon this showing Division 5 found that the service conducted by the appellee since May 29, 1936, was a different service from that conducted by him prior to that time, and therefore concluded that he did not come within "the grandfather clause." And so, the Commission denied Maher's application and ordered him "to cease and desist" from "all operations" as a common carrier in interstate commerce. Thereupon the appellee filed the present suit in the District Court for the District of Oregon against the United States and the Interstate Commerce Commission, praying that the Commission's order be set aside and "any construction thereunder" enjoined. The suit was disposed of on the pleadings, the answer of the Commission having incorporated its report and orders. A majority of the District Court entertained jurisdiction and held that the appellee was entitled to an "anywhere-for-hire" permit under "the grandfather clause" as well as the regular-route permit under § 207. 23 F. Supp. 810. Circuit Judge Haney found jurisdiction to review the cease and desist order, although not the order denying the certificate of convenience and necessity, but sustained the Commission's view of the Act.

The jurisdictional problem presents another instance of the Interstate Commerce Commission having been invested with power to free a complainant of restrictions placed upon his conduct by a statutory scheme and having definitely rejected the claim for dispensation. The applicant before the Commission then came into court to "set aside" and "annul" the "order" of the Interstate Commerce Commission, claiming that the Commission's action was based on a wrong reading of the authority which the Act of Congress gave it. To the hearing of such a claim there is no jurisdictional barrier, as we have held today in *Rochester Telephone Corp.* v. *United States, ante,* p. 125.[1]

On the merits the case brings into question the validity of the construction placed by the Interstate Commerce Commission upon § 206 (a) of the Motor Carrier Act relieving carriers operating on June 1, 1935, under the circumstances defined by the terms of § 206 (a) from the requirements of § 207.[2] The latter section requires a find-

---

[1] For reasons on which its legislative history appears to shed no light, the phrase "negative order" crept into § 205 of the Motor Carrier Act in a context not covering the present situation.

[2] "Sec. 206. (a) No common carrier by motor vehicle subject to the provisions of this part shall engage in any interstate or foreign operation on any public highway, or within any reservation under the exclusive jurisdiction of the United States, unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the Commission authorizing such operations: *Provided, however,* That, subject to section 210, if any such carrier or predecessor in interest was in bona fide operation as a common carrier by motor vehicle on June 1, 1935, over the route or routes or within the territory for which application is made and has so operated since that time, or if engaged in furnishing seasonal service only, was in bona fide operation on June 1, 1935, during the season ordinarily covered by its operation, except in either instance as to interruptions of service over which the applicant or its predecessor in interest had no control, the Commission shall issue such certificate without requiring further proof that public convenience and necessity

ing by the Commission that the granting of such a certificate is demanded by public convenience and necessity. But under § 206 (a) the Commission must issue "such certificate without requiring further proof that public convenience and necessity will be served" by an applicant who "was in bona fide operation as a common carrier by motor vehicle on June 1, 1935, over the route or routes or within the territory for which application was made and has so operated since that time." By this legislation Congress responded to the felt need for regulating interstate motor transportation through familiar administrative devices, while at the same time it satisfied the dictates of fairness by affording sanction for enterprises theretofore established. Whether an applicant seeking ex-

---

will be served by such operation, and without further proceedings, if application for such certificate is made to the Commission as provided in paragraph (b) of this section and within one hundred and twenty days after this section shall take effect, and if such carrier was registered on June 1, 1935, under any code of fair competition requiring registration, the fact of registration shall be evidence of bona fide operation to be considered in connection with the issuance of such certificate. Otherwise the application for such certificate shall be decided in accordance with the procedure provided for in section 207 (a) of this part and such certificate shall be issued or denied accordingly. Pending the determination of any such application the continuance of such operation shall be lawful: *And provided. further,* That this paragraph shall not be so construed as to require any such carrier lawfully engaged in operation solely within any State to obtain from the Commission a certificate authorizing the transportation by such carrier of passengers or property in interstate or foreign commerce between places within such State if there be a board in such State having authority to grant or approve such certificates and if such carrier has obtained such certificate from such board. Such transportation shall, however, be otherwise subject to the jurisdiction of the Commission under this part.

"(b) Application for certificates shall be made in writing to the Commission, be verified under oath, and shall be in such form and contain such information and be accompanied by proof of service upon such interested parties as the Commission shall, by regulation,

emption had in fact been in operation within the immunizing period of the statute was bound to raise controverted matters of fact. Their determination Congress entrusted to the Commission. The legal issues presented by this record are relatively simple once the somewhat confused operations of the appellee's business are clearly defined.

Invoking the "grandfather clause" the appellee sought from the Commission a certificate authorizing continuance of his regular service between the fixed termini of Portland and Seattle on U. S. Highway 99. But the Commission found that the regular operation over this route had only been instituted on May 29, 1936. Theretofore, and including the crucial period prior to June 1, 1935, the appellee had been engaged in quite different services from those for which it asked a certificate, namely, "an

require. Any person, not included within the provisions of paragraph (a) of this section, who or which is engaged in transportation in interstate or foreign commerce as a common carrier by motor vehicle when this section takes' effect may continue such operation for a period of one hundred and twenty days thereafter without a certificate and, if application for such certificate is made to the Commission within such period, the carrier may, under such regulations as the Commission shall prescribe, continue such operation until otherwise ordered by the Commission.

"Sec. 207. (a) Subject to section 210, a certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing, and able properly to perform the service proposed and to conform to the provisions of this part and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied: *Provided, however,* That no such certificate shall be issued to any common carrier of passengers by motor vehicle for operations over other than a regular route or routes, and between fixed termini, except as such carriers may be authorized to engage in special or charter operations."

irregular, so-called anywhere-for-hire operation in Oregon with occasional trips to points in Washington" over any route adapted to a particular trip, but using at least for part of the distance U. S. Highway 99 on trips to Washington. These irregular operations were discontinued after the appellee's regular route was established. Applying these findings which are binding here, the Commission ruled that the appellee did not bring himself within the privilege of the "grandfather clause." In making this application of the statute, the Commission properly construed it.

The recognized practices of an industry give life to the dead words of a statute dealing with it. In differentiating between operations over the "route or routes" for which an application under the "grandfather clause" is made as against operations "within the territory," Congress plainly adopted the familiar distinction between "anywhere-for-hire" bus operations over irregular routes and regular route bus operations between fixed termini.[3] Such recognition is implicit also in the provision of § 208 (a) that "Any certificate issued under section 206 or 207 shall specify the service to be rendered and the routes over which, the fixed termini, if any, between which, and the intermediate and off-route points, if any, at which, and in case of operations not over specified routes or between fixed termini, the territory within which, the motor carrier is authorized to operate." Since the new regular route of appellee was not in existence on June 1, 1935, and the irregular "anywhere-for-hire" service was not "so operated," as required by § 206, when the Commission passed upon the application for a

[3] See Motor Bus and Motor Truck Operation, 140 I. C. C. 685, 699; Coördination of Motor Transportation, 182 I. C. C. 263, 274. See also Coördination of Motor Transportation, Sen. Doc. No. 43, 72d Cong., 1st Sess., pp. 34–35; Regulation of Transportation Agencies, Sen. Doc. No. 152, 73d Cong., 2d Sess., pp. 176, 191–192.

156

"grandfather" certificate, the Commission rightly rejected the application.

But the District Court set aside the Commission's order on another ground. It held that when the Commission rejected appellee's claim under the "grandfather clause" another provision of § 206 (a) sprang into relevance, to wit "Otherwise the application for such certificate shall be decided in accordance with the procedure provided for in section 207 (a) of this part and such certificate shall be issued or denied accordingly." We do not read the statute as laying a compulsion upon the Commission to canvass all the questions of public and private interest that are implicit in an application for a certificate based on "public convenience and necessity" when the applicant himself only seeks the favor of the "grandfather clause" and makes no claim, either before the Commission or in his bill seeking to enjoin its action, to have the Commission act outside the "grandfather clause."

*Reversed.*