**HOWARD HALL CO., Inc., v. UNITED STATES et al.**
No. 5215.

District Court, N. D. Alabama, S. D.
April 17, 1941.

Boutwell & Pointer, of Birmingham, Ala., and Watkins & Watkins, of Atlanta, Ga., for plaintiff.

Thurman Arnold, Asst. Atty. Gen., Jim C. Smith, U. S. Atty., of Birmingham, Ala., S. R. Brittingham, Jr., Sp. Asst. to Atty. Gen., and Allen Crenshaw and Daniel W. Knowlton, Chief Counsel, both of Washington, D. C., for defendants.

Before McCORD, Circuit Judge, and KENNAMER and MURPHREE, District Judges.

McCORD, Circuit Judge.

The petitioner, Howard Hall Company, Inc., is an Alabama corporation operating as a motor carrier with offices and principal place of business in Birmingham, Alabama. On February 11, 1936, it filed application with the Interstate Commerce Commission for a certificate of public convenience and necessity under the "grandfather clause" of Section 206(a) of the Motor Carrier Act of 1935, 49 U.S.C.A. § 306(a).

The carrier sought a certificate authorizing "continuance of operation in interstate or foreign commerce, as a common carrier by motor vehicle, of general commodities, between all points in Kentucky, Alabama, Georgia, Tennessee, Indiana, Illinois, Wisconsin, Missouri, Arkansas, Louisiana, Ohio, Mississippi, Florida, South Carolina, North Carolina, West Virginia, Virginia, Maryland, Delaware, Pennsylvania, New Jersey, New York, District of Columbia, and all points in Michigan within 200 miles of Detroit and Benton Harbor, all points in Kansas within 200 miles of Topeka and Garnett, and all points in Texas within 200 miles of Henderson."

The application was filed and docketed by the Interstate Commerce Commission and a hearing was held before a trial examiner on February 15, 1937. Rail and motor carriers appeared in opposition to the application. At this first hearing the application was amended by eliminating therefrom all points in Wisconsin, Texas, Arkansas, Kansas, Missouri, and points in Florida south of Tampa and Lakeland, and points north of Chicago. The Examiner issued a recommended report and order on May 13, 1937, but, on motion of Howard Hall Company, Inc., the report was withdrawn and a further hearing set for August 20, 1937. After the second hearing and on November 30, 1937, the Examiner issued his report and order recommending that certain rights be granted to the applicant. Exceptions to the report were filed by the carrier, and on July 10, 1940, Division 5 of the Interstate Commerce Commission handed down its report and decision in the case. It found that the applicant had not served "enough representative points in all the states claimed with a sufficient degree of regularity to be entitled to authority to transport general commodities to and from all points within such a large territory as described in the amended application." After reviewing the evidence before it the Commission further found that the applicant "on June 1, 1935, and continuously since that time, has been in bona fide operation, in interstate or foreign commerce, as a common carrier by motor vehicle, of general commodities, except commodities of unusual value, * * *, between Birmingham, Alabama, and all points within 10 miles thereof, on the one hand, and, on the other, all points in North Carolina, Georgia, Mississippi, South Carolina, and

those in Florida on the north of a line consisting of U. S. Highway 92 from Tampa to Kissimmee, thence U. S. Highway 92 to Melbourne; of paper and paper products from Birmingham to New Orleans, La., Chattanooga and Knoxville, Tenn., and from Kingsport, Tenn., to Birmingham; of nails, pipe, pipe fittings, steel, and metal ceilings from Canton, Ohio, to Birmingham; of cloth from Alabama City, Ala., to Wheeling, W. Va.; and of matches from Chattanooga and Birmingham; all over irregular routes; that by reason of such operation it is entitled to a certificate authorizing the continuance thereof; and that the application in all other respects should be denied." Howard Hall Co., Inc., Common Carrier Application, 24 M.C.C. 273.

The order entered pursuant to the decision was to become effective on August 31, 1940, but the carrier filed application for rehearing and redetermination, and the Commission from time to time postponed the effective date of the order until February 3, 1941, when a final order of denial was entered. Thereafter, on February 28, 1941, under the provisions of 28 U.S.C.A. §§ 41(28), 43–48, Howard Hall Company, Inc., filed petition in this court to enjoin, set aside, and render ineffective that portion of the Commission's order which denied part of its application for a "grandfather" certificate. The Interstate Commerce Commission intervened as a party defendant under the provision of 28 U.S.C.A. § 45(a). A court of three judges was convened as required by statute, 28 U.S.C.A. § 47, and a hearing was held in Birmingham on April 14, 1941.

By stipulation and agreement of the parties and their respective counsel all issues presented by the petition are to be disposed of in this one proceeding and the case is, therefore, to be now decided upon its merits:

■ In a court review of an order of the Interstate Commerce Commission the range of issues is narrow. We are confined to a determination of whether or not the Commission's order violates the Constitution, exceeds the power delegated by statute, or is an exercise of power so arbitrary as virtually to transcend the authority conferred. Of such cases the Supreme Court recently said, "Only questions affecting constitutional power, statutory authority and the basic prerequisites of proof can be raised. If these legal tests are satisfied, the Commission's order becomes incontesta-

ble." Rochester Telephone Corp. v. United States, 307 U.S. 125, 59 S.Ct. 754, 762, 83 L.Ed. 1147; United States v. Maher, 307 U.S. 148, 59 S.Ct. 768, 83 L.Ed. 1162; Interstate Commerce Comm. v. Illinois Cent. R. Co., 215 U.S. 452, 30 S.Ct. 155, 54 L.Ed. 280; Commerce, 11 Am.Jur. §§ 172–174, et seq.; 15 C.J.S., Commerce, § 148, page 554, et seq.

■ Under the "grandfather clause" of the Motor Carrier Act the applicant, to be entitled to a certificate of public convenience and necessity, must have been engaged in "bona fide" operation as a motor carrier on June 1, 1935, "over the route or routes or within the territory for which application is made and has so operated since that time." In the determination of this fact question the weight of the evidence is for the Commission and not for the court. Loving, et al. v. United States, D.C., 32 F.Supp. 464, affirmed 310 U.S. 609, 60 S.Ct. 898, 84 L.Ed. 1387; Eastern Carrier Corp. v. United States, D.C., 31 F. Supp. 232; Philadelphia-Detroit Lines v. United States, D.C., 31 F.Supp. 188.

The petitioner recognizes the above stated principles but contends that the Commission erred as a matter of law in four particulars.

■■ It is first contended that although the Commission received evidence of operations for the "interim" period from June 1, 1935, to October 15, 1935, that it gave no consideration to such evidence, and that it erred in refusing to make a finding and grant a certificate under the provision of the "interim" section, Section 206(b), 49 U.S.C.A. § 306(b). The Commission received evidence of the "interim" operations of the petitioner and it will not be presumed that it failed to give due consideration to such evidence in passing upon the application for "grandfather" rights. Moreover, it appears that on October 30, 1939, Howard Hall Company, Inc., filed a separate application with the Commission for authority to operate under the provisions of Section 206(b), and that after a hearing the Commission issued a certificate of public convenience and necessity authorizing the carrier to carry on certain operations. No. Mc–42318(Sub–No.1) Interstate Commerce Commission. There is no merit in the contention that other rights under Section 206(b) should be granted under this petitioner's "grandfather" application. The petitioner's present contention is but an attempt to retry issues already

heard and determined by the Commission in another proceeding.

The petitioner's second contention is that there was evidence and a finding that there had been 55 movements of freight to and from an area within 100 miles of Birmingham prior to June 1, 1935, and 270 movements in the area thereafter, and that the Commission, therefore, erred as a matter of law in limiting operations "between Birmingham, Alabama, and all points within 10 miles thereof", and that the area should have been "within 100 miles of Birmingham". As to movements of freight in the 100-mile area the Commission found that of 1,000 shipments transported prior to June 1, 1935, 875 moved to or from Birmingham, and that only 55 moved from points within 100 miles of Birmingham, and that only "12 points were served in this comparatively large territory surrounding applicant's headquarters in Birmingham." Of 2,550 shipments transported after June 1, 1935, only 270 moved to or from 100 miles of Birmingham. The evidence of shipments within the 100 mile area claimed by the petitioner did not show substantial, bona fide operations of sufficient regularity to require the issuance of a certificate under the "grandfather clause" authorizing free lance operation in this large territory. In limiting the applicant's operations to and from Birmingham to a ten-mile zone beyond the city limits of Birmingham the Commission acted within its authority and not capriciously or arbitrarily.

The petitioner further contends that the Commission had no right to consider evidence of continuous operations beyond the date of the filing of the "grandfather" application. There is no merit in this contention. Those who seek "grandfather" rights under Section 206(a) must establish not only that they were in bona fide operation on June 1, 1935, but also that such operations were carried on continuously "since that time". In other cases, as here, the Commission has consistently refused to determine the rights of an applicant as of the date of the filing of the application, and has held that the requirement of continuity of operations is not dispensed with when the application for a "grandfather" application is filed. The words of the statute, "since that time", may not be limited and construed to mean "since that time and until the filing of an application". Evidence of activities of the petitioner subsequent to the filing of the application was properly received and considered by the Commission. United States v. Maher, 307 U.S. 148, 155, 59 S.Ct. 768, 83 L.Ed. 1162; Gregg Cartage & Storage Co. v. United States, et al.,[1] D.C., N.D. of Ohio, recently decided; Atlantic Motor Exp., Inc., Common Carrier Application, 12 M.C.C. 576, 579–580.

The petitioner's final contention is that the Commission was without authority to limit certain of its operations to the transportation of specified commodities between designated points. Upon the evidence before it the Commission found that:

1. "* * * Prior to and since June 1, 1935, applicant has held itself out to transport general commodities, with certain exceptions, between Birmingham and vicinity, on the one hand, and, on the other, all points in North Carolina, Georgia, Mississippi, South Carolina, and those points in Florida north of and including Tampa and Lakeland, and has actually conducted an operation consistent with such holding out."

2. "In addition the record shows that, prior to and since June 1, 1935, the applicant transported paper and paper products from Birmingham to New Orleans, La., and Chattanooga and Knoxville, Tenn., and from Kingsport, Tenn., to Birmingham; nails, pipe, pipe fittings, steel, and metal ceilings from Canton, Ohio, to Birmingham; cloth from Alabama City, Ala., to Wheeling, W. Va.; and matches from Wheeling to Chattanooga and Birmingham."

Consistent with the first finding above quoted the Commission granted general authority to transport commodities in the territories there named. In accordance with the second finding the Commission limited the applicant's authority to the territory and points named and the commodities listed. Applicant was thereby granted authority, both general and limited, to carry on virtually every substantial operation in which it had been engaged when the "grandfather clause" became effective. Under the facts and circumstances of the case this limitation upon the carrier's authority was just and equitable, and in so holding the Commission acted clearly within its province. Loving, et al. v. United States, D.C., 32 F.Supp. 464, affirmed 310 U.S. 609, 60 S.Ct. 898, 84 L.Ed. 1387; Eastern Carrier Corp. v. United States, D. C., 31 F.Supp. 232; Cf. Carolina Freight

---

[1] No opinion for publication.

Carriers Corp. v. United States, D.C. of W.D. of N.C., 38 F.Supp. 549, decided April 5, 1941.

On the record before us, which includes a transcript of the evidence before the Commission and a copy of the exhibits, we are of opinion and so hold that the evidence justified the order which was entered. The findings and holdings of the Commission are supported by the evidence, are not arbitrary or capricious, and will not be disturbed.

This court finds no reason to set aside, annul, or suspend the order of the Commission. The complaint is without merit and is hereby dismissed.