**WATERWAYS TRANSP., Inc. v. UNITED STATES.**

No. 6228.

United States District Court, E. D. Missouri, E. D.

April 11, 1949.

T. D. Drury, of St. Louis, Mo., and Royston & Rayzor and Robert Eikel, Jr., all of Houston, Tex., for plaintiff.

William J. Hickey, Asst. Atty. Gen., and Drake Watson, U. S. Dist. Atty., and William V. O'Donnell, Asst. U. S. Dist. Atty., both of St. Louis, Mo., for defendant.

Daniel H. Kunkel, of Washington, D. C., for Interstate Commerce Commission.

Ames, Hill & Ames, by Harry C. Ames, all of Washington, D. C., and Thompson, Mitchell, Thompson & Young, by Chas. M. Spence, all of St. Louis, Mo., for Mississippi Valley Barge Line, intervener.

Frederick E. Brown, of Washington, D. C., and Dwight D. Ingamells, of St. Louis, Mo., for American Barge Line Co., intervener.

Stinchfield, Mackall, Crounse & Moore, and Perry R. Moore, all of Minneapolis,

Minn., and B. W. LaTourette, of St. Louis, Mo., for Mid-Continent Barge Line, intervener.

Before JOHNSEN, Circuit Judge, and MOORE and HARPER, District Judges.

HARPER, District Judge.

The complainant sought a certificate as a common carrier by water in the transportation of commodities generally by non-self-propelled vessels and for general towage or in the alternative a permit as a contract carrier by water before the Interstate Commerce Commission on the theory that on January 1, 1940, it was so engaged as a common carrier within the meaning of the Water Carriers Act, 49 U.S.C.A. § 909, over the route for which application was made, and had so operated since that time.

The Commission found the complainant entitled only to a certificate to continue operation as a common carrier by water by towing vessels in the performance of general towage over a part of the route, to-wit, the Mississippi River from Prairie du Chien, Wis., to Cairo, Ill., the Illinois waterway, and the Ohio River below Paducah. The complainant's application was in all other respects denied.

The complainant filed suit in the District Court to enjoin, annul and set aside the order of the Commission, and that the Commission be directed to reinstate the proceedings before it and to grant complainant the certificate sought. The complainant urged in substance that the Commission's order was arbitrary and unreasonable, and acted in defiance of law in refusing to grant the certificate sought for freighting operations generally between the ports named in the application and in restricting the towage certificate granted to narrow limits that had little relation to the operation of complainant. The case was heard by a court composed of three judges, pursuant to Sections 2284 and 2325, Title 28 U.S.C.A.

█ Orders of the Interstate Commerce Commission are reviewable in this court. United States v. Maher, 307 U.S. 148, 59 S.Ct. 768, 83 L.Ed. 1162. The functions of the reviewing court are strictly limited. With respect to such limitations, the Supreme Court, in Rochester Telephone Corp. v. U. S., 307 U.S. 125, loc. cit. 140, 59 S.Ct. 754, 762, 83 L. Ed. 1147, said: "Only questions affecting constitutional power, statutory authority and the basic prerequisites of proof can be raised. If these legal tests are satisfied, the Commission's order becomes incontestable."

The complainant sought to secure from the Commission a certificate under the "grandfather clause" of the Water Carriers Act. The requirements under the "grandfather clause" are that the complainant carrier " * * * was in bona fide operation as a common carrier by water on January 1, 1940, over the route or routes or between the ports with respect to which application is made and has so operated since that time. * * *" 49 U.S.C.A. § 909(a).

█ The reports of the Commission, 260 I.C.C. 579 (report of October 4, 1945), and 265 I.C.C. 123 (report of May 26, 1947), comply with the statutory requirements that the Commission make a report which shall state the conclusions of law with its decision, order or requirement in the premises, and be a quasi jurisdictional finding sufficient for the court to determine if the statutory standards set up by Congress have been applied. United States v. Baltimore & Ohio Railroad Co., 293 U.S. 454, 55 S.Ct. 268, 79 L.Ed. 587. In addition to the report of the Commission, a transcript of the testimony, together with the exhibits received in the two hearings before the Commission's examiners have been submitted to this court as the evidence upon which the issues are to be determined.

The salient facts are set out by the Commission under the headings of "Dredging and within-harbor operations, Freighting, and Towage," in the Commission's report of October 4, 1945 (260 I.C.C. 579), and are as follows, to-wit:

"Dredging and within-harbor operations. Applicant's towboats and barges were, in some instances, used in dredging operations by contractors engaged in marine construction. The transportation

it performed in such instances was of rock, sand, or gravel removed from the river beds on the Illinois and Tennessee Rivers, and carried short distances within Illinois and Alabama. This part of applicant's business is not subject to regulation under part III of the act, because operation of the vessels in the performance of dredging is not that of a common or contract carrier, and the transportation performed in connection therewith was intrastate, which also is not subject to our jurisdiction.

"In addition, certain of applicant's operations were confined to services performed within harbor areas, particularly St. Louis harbor, and were not shown to be a part of a continuous through movement under a common control, management, or arrangement to or from a place within the limits of the harbor. Such operations are within the exemption provided in section 303(g) (1) [49 U.S.C.A. § 903(g) (1)].

"Freighting. The freighting services performed by applicant consist of 18 shipments in 1938, 26 in 1939, 74 in 1940, 33 in 1941, 23 in 1942, 3 in 1943, and 2 in 1944 up to and including September 16. The commodities transported were, for the most part, shipped in bulk, and consisted of liquid petroleum products, grain, sand, gravel, and fertilizers, which transportation is exempt under section 303(b) or (d) of the act. The only subject freighting performed during this period consisted of one shipment of draglines from Vacherie, La., to Cairo, Ill., in 1938, three shipments of sugar, in sacks, from Lockport and Reserve, La., to St. Louis and Chicago, in May, June and July of 1940, and two of cyanamid (fertilizer), in sacks, in November, 1940. No other freighting service subject to part III of the act is shown to have been performed by applicant, and subsequent to 1941, its freighting service was confined to the transportation of bulk petroleum products in certified tank barges. In the circumstances, we conclude that applicant has not established the right to a certificate authorizing freighting, and the application to that extent will be denied.

"Towage. The most of applicant's towing services between 1938 and 1944 was performed for other water carriers, and under section 303(f) (2) [49 U.S.C.A. § 903(f) (2)] such service is not subject to the provisions of part III of the act except as a part of the operations of such other carriers. For shippers, applicant towed empty barges, contractors' equipment, dredges, pontoons, drill boats, and petroleum in certified tank barges. The towage services along the claimed waterways will be separately discussed.

"—Mississippi River, St. Louis and north. While a large portion of the towage performed by applicant was not subject to regulation under part III of the act, nevertheless, it towed some traffic for shippers between St Louis and points on the Mississippi River north thereof, continuously since prior to January 1, 1940, which is not exempted from the provisions of part III. Among the towage services so performed between 1939 and January 1940 were empty barges from St. Louis to Joliet, Ill., and from LeClaire, Iowa, and New Boston, Ill., to Clarksville, Mo., and a dredge from Prairie du Chien, Wis., to Chicago. Between January 1940 and September, 1944, applicant towed empty barges from Rock Island, Ill., to Wood River, Ill., from Fountain City, Wis., to Rock Island and Bellevue, Iowa, and from Harbor Point, Mo., to Cairo, Ill., and contractors' Equipment from Winfield, Mo., to Washington, Mo., from Glasgow, Mo., to St. Louis, from St. Louis to Harbor Point and Boonville, Mo., and from Chouteau Slough, Mo., to Meredosia, Ill.

"—Illinois Waterway. The towage of single dredges from Rock Island and Plaquemine, La., to Joliet, and of empty barges from St. Louis to Joliet in 1938, and of a dredge from Prairie du Chien to Chicago, a dredge, oil barge, and drill boat from Joliet to Guntersville, Ala., and an empty barge from Guntersville to Joliet in 1939 comprise applicant's towing operations on the Illinois Waterway between 1938 and January 1940. Since that time no towage has been performed by applicant thereon, except one consignment of empty barges from St. Louis to Joliet and a dredge from Kingston Mines, Ill.,

to St. Louis, in 1941, and one shipment of contractors' equipment from Chouteau Slough to Meredosia in 1944.

"—Ohio and Cumberland Rivers. Applicant has performed no towing service on the Ohio River other than the towage of pontoons from St. Louis to Paducah, Ky., in 1939, empty oil barges from Ambridge, Pa., to St. Louis and from Evansville, Ind., to Wood River in 1940, and an empty barge from Harbor Point, Mo., to Paducah in 1943. No towage has been performed by applicant on the Cumberland River.

"—Missouri River. Other than the towage of contractors' equipment from Winfield to Washington in April 1940 and from St. Louis to Boonville, in August 1944, and of empty barges from Waverly, Mo., to St. Louis in March 1943, applicant has performed no towage on the Missouri River.

"—Mississippi River below St. Louis. Applicant towed a dredge from Plaquemine to Joliet in 1938, and in 1941 empty oil barges from Hartford, Ill., to Norco, La., and contractors' equipment from Natchez, Miss., to St. Genevieve, Mo. In 1942, it towed empty barges from Harbor Point to Cairo and empty oil barges from Hartford to New Orleans. Thereafter, no other towage was performed by applicant on the Mississippi River below St. Louis, except that of empty oil barges from St. Louis to Cairo and to Mile 75 on the Mississippi River, and of barges from Moccassin Springs, Mo., to St. Louis, in 1944."

■ In applications filed under the Motor Carriers Act, 49 U.S.C.A. § 301 et seq., the courts hold that a mere holding out to perform transportation service, as well as ability to serve, is not sufficient to meet the requirements of the "grandfather clause" that the carrier must have been in "bona fide operation" on June 1, 1935. The Supreme Court in McDonald v. Thompson, 305 U.S. 263, loc. cit. 266, 59 S.Ct. 176, 178, 83 L.Ed. 164, says: "The expression, 'in bona fide operation' * * * excludes the idea that mere ability to serve as a common carrier is enough, includes actual rather than potential or simulated service, * * *."

The Supreme Court in United States v. Carolina Freight Carriers Corporation, 315 U.S. 475, loc. cit. 480, 481, 62 S.Ct. 722, 726, 86 L.Ed. 971 with respect to the Motor Carrier Act, says: "The act provides the test of 'bona fide operation'. That standard carries the connotation of substantiality. It also makes clear that a holding out to serve a specified area is not alone sufficient. * * * Substantial, as distinguished from incidental, sporadic, or infrequent, service is required. Substantial service actually rendered may have been confined to narrow limits. * * * Ability to render the service throughout the wide reaches of the territory, which the applicant professed to be willing to serve, may not have existed."

■ Special liberality has, however, been applied by the Commission and the courts in dealing with water carrier applications involving "grandfather rights," and in several instances consideration has been given to both exempt and non-exempt transportation of the applicant before January 1, 1940, and thereafter. The Commission followed this liberal policy in the Russell Brothers Towing Co., Inc., Common Carrier Application, 250 I.C.C. 429, accomplishing the broad purpose of the statute. This policy of the Commission with respect to water carriers was approved by the Supreme Court in Barrett Line v. U. S., 326 U.S. 179, 65 S.Ct. 1504, 89 L.Ed. 2128. The court said in the Barrett case, 326 U.S. at page 199, 65 S. Ct. at page 1513, "Spasmodic operation hardly would be regarded as an inherent advantage of rail or perhaps of motor service in general. It is, or may be, the most valuable inherent advantage of a contract water carrier." To consider only complainant's transportation, which is subject to regulations, would give an incomplete picture of the nature and extent of its operations.

■ The record supports the Commission's factual summary quoted above from its report. In view of the waterways involved, the question whether the complainant has shown substantiality of performance of its holding out as a common carrier performing freighting and towage services and the requisite bona fides of its

operation was for the Commission to determine. Only where error is patent will the courts interfere. United States v. Carolina Freight Carriers Corporation, 315 U.S. 475, 62 S.Ct. 722, 86 L.Ed. 971. "The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body." Mississippi Valley Barge Line Co. v. U. S., 292 U.S. 282, loc. cit. 287, 54 S.Ct. 692, 694, 78 L.Ed. 1260.

While the Commission and the courts have been liberal in dealing with applications under the "g r a n d f a t h e r clause" of the Water Carriers Act in considering exempt operations as well as non-exempt operations, and while the operations of the complainant were necessarily curtailed to some extent after the application was made as a result of the war, yet we think the conclusion reached by the Commission with respect to freighting service is inevitable, despite that liberality, in that the complainant's freighting operations from January 1, 1938, to January 1, 1940, do not satisfy the requirements of the "grandfather clause" when such non-exempt freighting operations consisted of only one shipment of draglines from Vacherie, La., to Cairo, Ill., in 1938, and exempt operations at the most only spasmodic.

There is ample evidence to support the Commission's finding that the complainant was in bona fide operation as a common carrier by water by towing vessels between the ports and points along the Mississippi River from Prairie du Chien to Cairo, the Illinois waterway, and the Ohio River below Paducah, including the ports named. In reaching this decision the Commission probably took into consideration exempt as well as non-exempt operations, but considering all of the towing operations beyond these points in the waterways involved, the operations could properly be held not to meet the requirements of the "grandfather clause", and the court will not interfere with such a determination, even though there was a curtailment of towing operations to some extent after the application was made as a result of the war, when such towing operations from January 1, 1938, to January 1, 1940, con-

sisted of the towing of a dredge from Plaquemine, La., to Joliet, Ill., in 1938, and the towage of pontoons from St. Louis, Mo., to Paducah, Ky., in 1939.

The prayer of the complainant will be denied.

Judgment accordingly may be tendered for approval, signature and entry.