**L. A. TUCKER TRUCK LINES, Inc.
v. UNITED STATES et al.**

**No. 7490.**

United States District Court,
E. D. Missouri, E. D.

Oct. 20, 1953.

B. W. LaTourette and Gregory M. Rebman, St. Louis, Mo., for plaintiff.

William J. Hickey, Spec. Asst. to Atty. Gen., George L. Robertson, U. S. Atty., and Marvin C. Hopper, Asst. U. S. Atty., St. Louis, Mo., for defendant, United States.

Edward M. Reidy, Washington, D. C., Chief Counsel, Interstate Commerce Commission, for defendant, Interstate Commerce Commission.

Before WOODROUGH, Circuit Judge, HULEN and HARPER, District Judges.

HARPER, District Judge.

This is an action by L. A. Tucker Truck Lines, Inc., to annul, set aside and enjoin an order of the Interstate Commerce Commission granting C. L. Cunningham, d/b/a Pemiscot Motor Freight Company (hereinafter referred to as Pemiscot Motor Freight), a common carrier by motor vehicle, additional operating authority to operate in interstate commerce over regular routes between specified points in the United States as more fully described in a certificate of public convenience and necessity issued to Pemiscot Motor Freight in accordance with the terms of the above described order. The case was heard by a court composed of three judges, pursuant to Sections 2284 and 2325, Title 28 U.S.C.A.

Orders of the Interstate Commerce Commission are reviewable in this court. United States v. Maher, 307 U.S. 148, 59 S.Ct. 768, 83 L.Ed. 1162. The functions of the reviewing court are strictly limited. With respect to such limitations the Supreme Court in Rochester Telephone Co. v. United States, 307 U.S. 125, loc. cit. 140, 59 S. Ct. 754, 762, 83 L.Ed. 1147, said: "Only questions affecting constitutional power, statutory authority and the basic prerequisites of proof can be raised. If these legal tests are satisfied, the Commission's order becomes incontestable."

Pemiscot Motor Freight, prior to the filing of its application for a certificate of convenience and necessity which the

plaintiff here seeks to set aside, held certificates of public convenience and necessity issued by the Interstate Commerce Commission authorizing it to operate over irregular routes in the carriage of general commodities from and to points within the general area covered by the applications involved. Such operation consisted of service (1) between the commercial zone of St. Louis-East St. Louis, and points in Pemiscot County, and Portageville, Missouri, (2) between Cairo and points in Pemiscot County, and Portageville, Conran, Marston, Lilbourn, Risco, Parma, Catron, New Madrid, Kewanee, Matthews, Kennett, Caruth, Senath, Arbyrd, Cardwell and Hornersville, Missouri, and (3) between Memphis and points in Pemiscot County, and Portageville and Sikeston, Missouri.

Interstate operations were begun in January, 1945. Since 1944 Pemiscot Motor Freight has been engaged in transportation in intrastate commerce between St. Louis, Missouri, and points in southeastern Missouri, in which area are located the above enumerated specific points. In its application in the instant proceeding, Pemiscot Motor Freight stated that its primary purpose was to obtain a certificate authorizing the performance of a regular route service in the same territory (adding several additional points in the territory, including Sikeston) where it was at that time already authorized to perform an irregular route service. The extent of applicant's sought operation pertinent to the issues involved in this proceeding may be generally described as extending from St. Louis to Memphis over routes representing Illinois highways to Cairo, and continuing over Missouri highways to Sikeston and points in southeastern Missouri, then to Memphis through the point of Blytheville, Arkansas.

L. A. Tucker Truck Lines, plaintiff in this action, is a common carrier by motor vehicle, holding certificates of public convenience issued by the Interstate Commerce Commission, authorizing it to engage in interstate commerce over reg-ular routes between numerous points within the states of Missouri, Illinois and Arkansas. Pemiscot Motor Freight operations in the past to several points in southeastern Missouri have been competitive to service performed by the plaintiff. Pemiscot Motor Freight's equipment consisted of eight tractors, eight trailers and nine trucks. The need for Pemiscot Motor Freight's conversion of its service from operating over irregular routes to regular route service was necessitated because another common carrier which operated in the general area in question went out of business.

The Interstate Commerce Commission issued a certificate to Pemiscot Motor Freight which differed somewhat from its original application, but to which it agreed. While the plaintiff in its petition seeks to set aside the order of the Interstate Commerce Commission, by its brief it concedes that it only seeks to set aside that portion of the Commission's order which authorized Pemiscot Motor Freight to perform an interstate operation between St. Louis, Missouri, and Sikeston, Missouri, and that the order of the Interstate Commerce Commission should only be revoked to that extent. The only question presented to the court then, is: From the record viewed as a whole is there sufficient evidence to sustain the granting to Pemiscot Motor Freight of authority to operate between St. Louis, Missouri, and Sikeston, Missouri? The evidence with respect to St. Louis-Sikeston service was very meager. The Hearing Examiner in his report, pages 20–21 of the exhibits attached to the petition, summarized the testimony of the only witness, other than applicant, who testified with respect to Sikeston as follows:

"A witness from Sikeston, population 10,000, is engaged in the milling business, and has utilized applicant's service from Memphis for a number of years in the movement of empty bags, with full satisfaction. While the purchases are frequent throughout the years, ship-

ments do not occur every day, as the company operates fifteen privately owned trucks itself. This city is served by several other motor carriers, most of whom also handle shipments for this industry; also less than carload shipments arrive periodically by railroad."

An examination of the transcript of testimony further discloses that the only mention made by the witness from Sikeston (R. B. Bowman) with respect to shipments between St. Louis and Sikeston, was to the effect that sometimes bags were purchased by the milling company in St. Louis, but he did not testify with respect to the manner in which such bags were shipped, or the adequacy of the present service or the necessity for additional service.

The only other testimony with respect to St. Louis-Sikeston service was from C. L. Cunningham, the owner of Pemiscot Motor Freight. He identified and there were introduced 20,000 shipping documents covering deliveries by Pemiscot Motor Freight during the last six months of 1948. These shipping documents covered intra and interstate shipments, but none of them pertained to Sikeston other than shipments from Memphis. Cunningham stated, page 29 of the transcript of testimony: "I have no authority whatsoever out of any place into Sikeston today, except out of Memphis."

The record is devoid of any showing whatsoever that there is any need for any additional service from St. Louis-East St. Louis to Sikeston, or that the present service is in any manner inadequate. This court agrees with the reasoning expressed in Hudson Transit Lines v. U. S., D.C., 82 F.Supp. 153 loc. cit. 157, affirmed per curiam 338 U.S. 802, 70 S.Ct. 59, 94 L.Ed. 485, where the court said:

"The Commission has frequently held that under § 207 of the Act, 49 U.S.C.A. § 307, there must be an affirmative showing not only that a common carrier service is required in the convenience of the public but also that it is a necessity, and that the latter element includes a showing that present facilities are inadequate. (Citing cases.) The courts, too, have recognized inadequacy of existing facilities as a basic ingredient in the determination of public 'necessity'. (Citing cases.) This does not mean that the holder of a certificate is entitled to immunity from competition under any and all circumstances. (Citing cases.) The introduction of a competitive service may be in the public interest where it will secure the benefits of an improved service without being unduly prejudicial to the existing service. (Citing case.) No such finding has here been made, nor is there any evidence to support such a finding."

There was no evidence before the Commission to sustain the need for granting additional service between St. Louis, Missouri, and Sikeston, Missouri, nor was there a showing that the present service was inadequate. While the routes over which Pemiscot Motor Freight operated required it to pass through Sikeston in order to render service to other points farther south granted in the certificate, this in the court's opinion is no justification for granting it authority to serve Sikeston.

Accordingly, so much of the order of the Interstate Commerce Commission and the certificate of convenience and necessity which authorized Pemiscot Motor Freight to perform an interstate operation between St. Louis, Missouri, and Sikeston, Missouri, is set aside and the cause remanded to the Commission for such action as it may deem appropriate and in accordance with this opinion.

Attorneys for plaintiff will prepare the Findings of Fact, Conclusions of Law and Judgment to be entered by the court.