**DENTON PRODUCE, INC., an Oklahoma Corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant,**

and

**Interstate Commerce Commission, Intervening Defendant.**

**Civ. No. 9694.**

United States District Court
W. D. Oklahoma.
June 14, 1967.

Frank Carter, of Otjen, Carter, Huddleston & Otjen, Enid, Okl., for plaintiff.

Donald F. Turner, Asst. Atty. Gen., John H. D. Wigger, Dept. of Justice, Washington, D. C., B. Andrew Potter, U. S. Atty., Oklahoma City, Okl., for the United States.

Robert W. Ginnane, General Counsel, Betty Jo Christian, Raymond M. Zimmet, Washington, D. C., for Interstate Commerce Commission.

Before HILL, Circuit Judge, and DAUGHERTY and EUBANKS, District Judges.

DAUGHERTY, District Judge.

This is a review of an Order of the Interstate Commerce Commission (Commission) entered with reference to the plaintiff's application for "grandfather" authority under the provisions of Section 7(c) of the Transportation Act of 1958 (P.L. 85–625, 72 Stat. 568) to transport bananas.

In 1958 the Transportation Act was amended to eliminate the exemption previously afforded bananas (and other commodities not involved herein) and the transportation of bananas was then brought under the regulatory power of the Commission. As a result a certificate of public convenience and necessity from the Commission was required. To protect carriers who were already engaged in the bona fide transportation of bananas a "grandfather" clause was enacted in the 1958 amendments under which certificates or permits were required to be issued without regard to public convenience and necessity to any person who could show that he had been engaged in bona fide operations in the transportation of bananas on May 1, 1958, and had continued in such operations since that time.[1]

After extensive proceedings the Commission ordered that the plaintiff be granted the following authority to transport bananas:

> "(1) from Galveston, Tex., to Denver, Colo., Wichita Falls, Tex., and points in Nebraska, Kansas, and Oklahoma; and (2) from New Orleans, La., to Norfolk and Grand Island, Nebr."

This order was decided on July 13, 1961 and served on July 21, 1961. The entire Commission denied the plaintiff's further petition for reconsideration and rehearing on February 19, 1962, and has denied other such petitions since such date.

---

1. Section 7(c) of the Transportation Act of 1958 containing the "grandfather" clause provides:

 "(c) Subject to the provisions of section 210 of the Interstate Commerce Act, if any person (or its predecessor in interest) was in bona fide operation on May 1, 1958, over any route or routes or within any territory, in the transportation of property for compensation by motor vehicle made subject to the provisions of part II of that Act by paragraph (a) of this section, in interstate or foreign commerce, and has so operated since that time

 * * * except * * * as to interruptions of service over which such applicant * * * had no control, the Interstate Commerce Commission shall without further proceedings issue a certificate or permit, as the type of operation may warrant, authorizing such operations as a common or contract carrier by motor vehicle if application is made to the said Commission as provided in part II of the Interstate Commerce Act and within one hundred and twenty days after the date on which this section takes effect. * * * *"

The plaintiff complains herein as to that portion of the order of the Commission which denies to it the right to serve points in the State of Texas, Colorado and South Dakota and denies to it the right to deliver from all gulf ports. The plaintiff asserts that these denials are erroneous, unreasonable and are unsupported by the record.

The defendants herein by joint answer deny that the order of the Commission is erroneous, unreasonable or unsupported by the record and ask that the complaint be dismissed.

 Orders of the Commission may not be set aside, modified or disturbed if they are within the scope of the Commission's statutory authority and are based upon adequate findings which are supported by substantial evidence upon the whole record. United States v. Pierce Auto Freight Lines, 327 U.S. 515, 535–536, 66 S.Ct. 687, 90 L.Ed. 821 (1946); Rochester Telephone Corp. v. United States, 307 U.S. 125, 138–140, 59 S.Ct. 754, 83 L.Ed. 1147 (1939). The weight of the evidence and the inferences to be drawn therefrom are matters for the Commission, not the Courts. United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 489–490, 62 S.Ct. 722, 86 L.Ed. 971 (1942); United States v. Chicago Heights Trucking Co., 310 U. S. 344, 352–353, 60 S.Ct. 931, 84 L.Ed. 1243 (1940). The Commission's judgment is to be exercised in the light of each individual case. The Court on review is not concerned with the correctness of the Commission's reasoning or with the consistency or inconsistency of decisions rendered by it. Virginian Ry. Co. v. United States, 272 U.S. 658, 665–666, 47 S.Ct. 222, 71 L.Ed. 463 (1926); Western Paper Makers' Chemical Co. v. United States, 271 U.S. 268, 271, 46 S.Ct. 500, 70 L.Ed. 941 (1926).

 This restricted scope of judicial review is applicable to "grandfather" proceedings. United States v. Carolina Freight Carriers Corp., supra;

United States v. Maher, 307 U.S. 148, 153–154, 59 S.Ct. 768, 83 L.Ed. 1162 (1931), reh. denied 307 U.S. 649, 59 S.Ct. 831, 83 L.Ed. 1528; Motor Freight Express v. United States, 119 F.Supp. 298, 303 (M.D.Pa.–1954), affirmed 348 U.S. 891, 75 S.Ct. 215, 99 L.Ed. 700; Riss & Co. v. United States, 100 F.Supp. 468, 483 (D.Mo.–1951), affirmed 342 U.S. 937, 72 S.Ct. 559, 96 L.Ed. 697, reh. denied 343 U.S. 937, 72 S.Ct. 769, 96 L.Ed. 1344. The granting of areas or points of origin and destination in a given case has been entrusted by the Congress to the Commission whose judgment in each matter has been characterized as being "highly expert." It is only where the error is patent that the Courts may say the Commission has transgressed its authority. United States v. Carolina Freight Carriers Corp., supra.

 Furthermore, it is well settled that the judicial review must be confined to the record made by the Commission. Evidence outside that record is inadmissible for any purpose and cannot be considered by the Court. United States v. Jones, 336 U.S. 641, 673, 69 S.Ct. 787, 93 L.Ed. 938 (1949); Tagg Bros. & Moorhead v. United States, 280 U.S. 420, 443–445, 50 S.Ct. 220, 74 L.Ed. 524 (1930); Radio Corp. of America v. United States, 95 F.Supp. 660, 669 (N.D. Ill.–1950), affirmed 341 U.S. 412, 71 S. Ct. 806, 95 L.Ed. 1062.

The decisions concerning the "grandfather" clause in the Motor Carrier Act of 1935 are [2] applicable to cases arising under the 1958 "grandfather" clause with which we are here concerned. The leading decisions which establish the standards by which a "grandfather" clause is to be administered are United States v. Carolina Freight Carriers Corp., supra, and Alton R. Co. v. United States, 315 U.S. 15, 62 S.Ct. 432, 86 L. Ed. 586 (1942). The test or standard is the scope of bona fide operations on the statutory cutoff date and since that time.

2. 49 U.S.C. § 306(a).

In United States v. Carolina Freight Carriers Corp., supra, it is stated:

"The Act provides the test of 'bona fide operations'. That standard carries the connotation of substantiality. It also makes clear that a holding out to serve a specified area is not alone sufficient. It is 'actual rather than potential or simulated service' which is required. McDonald v. Thompson, 305 U.S. 263, 266 [59 S.Ct. 176, 178, 83 L.Ed. 164]. Substantial, as distinguished from incidental, sporadic, or infrequent, service is required."

■ It shoud be further noted that the statute provides "grandfather" rights only to the extent that a carrier was in bona fide operations on May 1, 1958 *and* has so operated since that time. This means that the maximum extent of "grandfather" rights to which a carrier may be entitled is fixed by the extent of his operations on the critical date—May 1, 1958. Operations subsequent to that date are relevant for the limited purpose of showing that such operations have not been abandoned; but no new "grandfather" rights can be acquired by such subsequent operations. Gregg Cartage & Storage Co. v. United States, 316 U.S. 74 at page 78, 62 S.Ct. 932, 86 L.Ed. 1283; Alton R. Co. v. United States, supra; North-South Freightways v. United States, 55 F.Supp. 696, 697 (D. N.Y.–1944); Watson Bros. Transp. Co. v. United States, 59 F.Supp. 762, 779 (D. Neb.–1945).

■ With reference to the Commission denying the plaintiff the right to serve the entire State of Texas as a destination point, the record reveals that the only shipments of the plaintiff terminating in the State of Texas originated in Galveston, Texas. None originated in New Orleans, Louisiana. These shipments were, therefore, intra state commerce for which no authority from the Commission is required. The record does not indicate a continuous or through movement of goods from a foreign port through Galveston directly to a point in Texas. Therefore, the grant of authority in the Commission order to the plaintiff to operate from Galveston to Wichita Falls, Texas, is superfluous and the complaint of the plaintiff on this point is without merit.

■ With reference to the Commission denying the plaintiff the right to serve points in the State of Colorado, the record indicates that Denver, Colorado, was the only point in Colorado to which the plaintiff transported bananas. Only a few shipments were made and all originated in Galveston, Texas. This operation of the plaintiff in the State of Colorado which was limited to Denver is not sufficient to justify the grant of area-wide authority to serve the entire State of Colorado. United States v. Carolina Freight Carriers Corp., supra; Alton R. Co. v. United States, supra. The authority granted the plaintiff by the Commission from Galveston, Texas, to Denver, Colorado, is not erroneous or unreasonable but is fully supported by the record. It is deemed to be the proper authority to be granted.

■ With reference to the Commission denying the plaintiff the right to serve any points in the State of South Dakota, the record indicates that the plaintiff had made only two shipments prior to May 1, 1958. These were to Rapid City, South Dakota. A few trips were thereafter made to two other cities in South Dakota. This operation of the plaintiff in South Dakota is not substantial and under the standard set by United States v. Carolina Freight Carriers Corp., supra, the plaintiff is not entitled to authority to serve points in the State of South Dakota. This denial of authority by the Commission is not erroneous, but is reasonable and is amply supported by the record.

■ With reference to the Commission denying the plaintiff the right to deliver from all gulf ports instead of only Galveston, Texas, and New Orleans, Louisiana, it is the contention of the plaintiff that it should be given area-wide point of origin authority to include all the gulf ports. The defendants assert

that all shipments made by the plaintiff both before May 1, 1958, and since that date until its order above mentioned was entered (decided on July 13, 1961— served on July 21, 1961) were from only Galveston, Texas, and New Orleans, Louisiana, and that the authority granted the plaintiff should, therefore, be limited to those two ports. It appears that the authority, as granted by the Commission, is correct under the law and the record made before the Commission. Under such record the plaintiff only shipped from Galveston, Texas, and New Orleans, Louisiana, prior to the critical date of May 1, 1958, and made no shipments from any other ports according to the record up to the time that the evidence was closed before the Commission and its order complained of was entered. Thus, there were no bona fide operations from all the gulf ports but rather only from the two ports for which point of origin authority was granted by the Commission. Under the standard outlined in United States v. Carolina Freight Carriers Corp., supra, the authority requested for point of origin from all the gulf ports could not be based on substantial operations involving all such ports for obvious reasons.

The plaintiff urged at the trial and in its briefs before this Court that shipments have been made by the plaintiff since the order complained of herein was entered by the Commission from another port in the gulf area, namely, Houston, Texas, and that the Court should remand this case to the Commission for further proceedings to allow the Commission to give consideration to this subsequent point of origin. Such action by the Court is not proper inasmuch as the plaintiff did not ship from ports other than New Orleans, Louisiana, and Galveston, Texas, prior to the critical date of May 1, 1958, and such operations would not support the grant of area-wide authority now requested. Shipments from only one port in Texas and one port in Louisiana (and only a few shipments from New Orleans to one point in Oklahoma and three points in Nebraska) do not justify the application of the area-wide pattern of service concept to all the gulf ports as origin territory as requested by the plaintiff. Moreover, the basic requirements *in the conjunctive* are that there be shipments by the applicant before said critical date *and* that the applicant has so operated since that time. It would be improper for an authority to be granted under the test or standard involved based on shipments made from ports only since the critical date of May 1, 1958. In addition, the Commission had before it and considered operations of the plaintiff during the period extending from January 1957 to December 1959. The evidentiary hearing was held on March 4, 1960. This covers a period of nearly two years after the critical date of May 1, 1958. An administrative proceeding must eventually come to an end. The Commission entered two orders, the last being more broad than the first, and resulted from a reopening of the application. The recommendation of the examiner was more restricted than either order. To now order a further reopening to consider new operations of the plaintiff conducted after the Commission has considered the operations of the plaintiff on and for a period of nearly two years after May 1, 1958, is not justified in this case. To do so would be to order the Commission to consider remote and irrelevant operations. Thus, this request from the plaintiff must be and the same is hereby denied by the Court.

If the plaintiff may wish after the Commission order to expand its operations beyond those conducted during the critical period, either to obtain new customers or to "follow the traffic" of former customers who shifted their base of operations, its remedy is the filing of an application under Section 207 of the Interstate Commerce Act [3] which provides for the issuance of certificates upon proof that the service is needed for the public convenience and necessity. In

---

3. 49 U.S.C. § 307(a).

connection with this type of application, the Commission has held that evidence of operations conducted by an applicant under color of "grandfather" rights during the pendency of a "grandfather" application may be considered in passing upon the merits thereof. Crichton v. United States, 56 F.Supp. 876, 879–880 (S.D. N.Y.–1944), affirmed 323 U.S. 684, 65 S.Ct. 559, 89 L.Ed. 554; D. A. Beard Truck Lines Company, Common Carrier Application, 34 M.C.C. 395, 397 (1942).

The Court, therefore, concludes that the authority granted by the Commission was proper in all respects and the authority requested by the plaintiff and denied by the Commission was properly denied. The Complaint of the plaintiff should be dismissed and judgment rendered herein for the defendants.

Counsel for the defendants will prepare an appropriate judgment based on the foregoing and submit the same to the Court for signature and entry herein.